IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JUAN HERNANDEZ, DEQUAN KIRKWOOD, MANUEL TREVINO, and KENT WHEATFALL, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**THE CITY OF HOUSTON, TEXAS,**<br><br>**Defendant.** | Case No. 16-CV-3577<br><br>**STIPULATION AND ORDER CONCERNING PRODUCTION OF ELECTRONICALLY STORED INFORMATION** |

WHEREAS, counsel for Plaintiff and Defendant (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulation and [Proposed] Order Concerning Production of Electronically Stored Information ("Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

IT IS HEREBY ORDERED that:

1. All Parties are bound by and subject to the terms of this Order.

2. <u>Definitions</u>.

    a.    "Discovery Material" is defined as all products of discovery and all information derived there from, including, but not limited to, documents, objects and things, deposition testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

    b.    Plaintiff and Defendant, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

    c.    "Plaintiff" or "Plaintiffs" as used herein shall mean Plaintiff Juan Hernandez, Plaintiff DeQuan Kirkwood, Plaintiff Manuel Trevino, Plaintiff Kent Wheatfall, and all Opt-In Plaintiffs, as well as any other individually named plaintiff in this case or in any case that is consolidated with this matter and any other individual that opts-in to this case or any such consolidated matter.

    d.    All other terms used herein shall be defined as they are in the Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth Edition).

3.    <u>Cooperation</u>. The Parties shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(1); and producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.

4.    <u>Search Methodology</u>.

    a.    The parties shall apply agreed-upon search terms to custodian email as a mechanism to cull the volume of data subject to manual attorney review. A list of agreed-upon

search terms is attached in Appendix B. This initial list is subject to further revision and/or supplementation upon agreement of the parties or order of the Court. Additionally, the parties have an obligation to disclose additional search terms if manual review or other investigation identifies words, abbreviations, or phrases that are necessary to gather records responsive to document requests (for example, if the City learns that a slang term is used internally to refer to one of the relevant jails).

    b.    The scope of the Parties' search for ESI shall include all available forms of ESI including, but not limited to:

        i.    All ESI generated by an employee, agent, contractor, or entity related to the Plaintiffs, including ESI stored on mainframe computers or local and network computers or drives or servers or any other media or location where ESI can be or is stored;

        ii.    Distributed data or removable data, i.e., information which resides on portable media and non-local drives, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, zip drives, Internet repositories including emailed host by Internet service providers, employer-provided handheld storage devices such as PDAs, BlackBerry devices, cellular telephones, and flash memory drives; and

        iii.    Network ESI, including, email servers, ISP servers, network servers, cloud servers and fax servers.

    c.    Once a final search protocol has been agreed to and executed, a requesting Party may, in good faith, seek to expand the scope of the search. Where such a request is made,

the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion. If the Parties cannot reach agreement, any dispute shall be presented to the Court.

5. <u>Proposed Custodians</u>. The parties shall produce responsive, non-privileged ESI and hard copy materials from a list of agreed-upon custodians, attached as Appendix A. This initial list is subject to further revision and/or supplementation upon agreement of the parties or order of the Court.

6. <u>Deduplication</u>. The Parties shall make reasonable efforts to deduplicate ESI. ESI shall be globally deduplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). The names of all custodians who were in position of a document prior to deduplication will be populated in the ALL_CUSTODIANS metadata field. The original file paths of a document prior to deduplication will be populated in the All FILE PATHS metadata field.

7. <u>Email Threading</u>. In order to reduce the volume of entirely duplicative content within email threads, the Parties shall utilize "email thread suppression." As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

8. <u>Privilege Logs And Redaction</u>. An email thread for which a party claims a privilege may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread.

    (i)    For all documents withheld on the basis of privilege, the Parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

    a.    A unique number for each entry on the log.

    b.    The date of document.

    c.    The custodian from whom the document was collected.

    d.    The author of the document.

    d.    The recipient(s) of the document where reasonably ascertainable (including recipients in the "To" "Cc" and "Bcc" fields of email correspondence). The parties will mark any attorney appearing in the "To" "From" "Cc" and "Bcc" fields with an asterisk ("*") to denote that he or she is an attorney.

    e.    Attorney providing advice (where not apparent from the document).

    f.    A description of the document, including a description of why privilege is being asserted over the document. This description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

    g.    The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

    h.    Whether the document is a standalone document, an attachment to a parent document, or a parent document.

    i.    Whether the document was redacted or withheld.

(ii) Privilege logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery. If the log(s) are produced after all productions are complete, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery.

(iii) With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

(iv) This ESI Protocol incorporates by reference the Court's Protective Order, entered July 13, 2017 (Dkt. No. 29).

(v) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

9. Production Format For ESI.

a. General Provisions. Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

b. <u>Document Text</u>. All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

c. <u>Parent-Child Relationships</u>. For email collections, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with the parent email record.

d. <u>Dynamic Fields</u>. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

e. <u>Non-redacted Word Processing Files</u>. All word processing files, including without limitation Microsoft Word files, that do not require redactions, will be produced in native file format showing comments and track changes, and as *.tiff images showing track changes and comments. A UNC file path must be included in the ESI load file.

f. <u>Non-redacted Spreadsheet Files</u>. Spreadsheet files, including without limitation Microsoft Excel files, that do not require redactions will be produced as native files showing comments and similar data. A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. To the extent Parties

prefer native file redaction of Spreadsheet File, the Parties will meet and confer to discuss the form of production.

    g.  <u>Presentation Files</u>. Presentation files, including without limitation Microsoft PowerPoint files, will be produced as native files showing comments, hidden slides, speakers' notes, and similar data. A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. The Parties will meet and confer regarding production of presentation files with alternate default settings.

    h.  <u>Database Records and Structured Data</u>. To the extent that any Party requests data or information (other than email) that is stored in a structured database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the opposing Party will make reasonable efforts to determine whether such data can be produced and, if so, make a production in existing report formats, or report formats that can be developed without undue burden. Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party, containing fields and reference points requested by producing Party to the extent they are exist, are responsive, and are reasonably accessible. To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss a different form of production.

    i.  <u>Embedded Files</u>. Embedded files are produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

j. <u>Time Zone</u>. All metadata provided pertaining to dates and times will be standardized to Universal Coordinated Time (UTC).

k. <u>Bates Numbering</u>. Files will be named according to the Bates number of the corresponding *.tiff image. The Bates number will:

  i. be consistent across the production;

  ii. contain no special characters; and

  iii. be numerically sequential within a given document.

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

l. <u>Load File Formats</u>. ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

m. <u>Metadata to be Produced</u>. Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| | | |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email **and** attachment |

| FIELD | DESCRIPTION | APPLIES TO |
|---|---|---|
| **ENDDOC** | Ending bates | Hardcopy, edoc, email **and** attachment |
| **CUSTODIAN** | Custodial **or** non-custodial source(s) from which the **document** was collected | Hardcopy (if coded), edoc, email **and** attachment (populated through processing) |
| **ALL CUSTODIANS** | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email **and** attachment (populated through processing) |
| **FAMILYID OR ATTACHID** | Family (Range of bates related **documents** (i.e. email & attachment) - this field will be populated for **all** records in the family), and will distinguish parent documents from attachments. | Hard copy, edoc, emails **and** attachments (populated through processing) |
| **PROPERTIES OR RCRDTYPE** | Record type – will be either "email," "attachment," "edoc," **or** "hardcopy." | |
| **FROM** | Email Author | Emails (populated through processing) |
| **TO** | Recipient | Emails (populated through processing) |
| **CC** | CC field - In the event of emails | Emails (populated through processing) |
| **BCC** | Bcc field - in the event of emails | Emails (populated through processing) |
| **SUBJECT** | Subject | Emails (populated through processing) |
| **DOCTITLE** | **Document** Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc **or** attachment (populated through processing) |
| **DOCDATE** | **Document** Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email **and** Attachments |
| **DATESENT** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |

| | | |
|---|---|---|
| **TIMESENT** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **TIMESVD** | Time saved, format 00:00:00 AM/PM | (populated through processing) |
| **PAGECOUNT** | **Document** page count | Edoc **or** attachment (populated through processing) |
| **FILENAME** | File name/attachment name | Electronic files **and/or** attachments (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, PowerPoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files **and/or** emails, attachments (populated through processing) |
| **FOLDERID OR ORIGFOLDERPATH OR FILEPATH** | File path/folder structure of original native file as it existed at the time of collection.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) | Electronic files **and/or** emails, attachments (populated through processing) |
| **ALL FILEPATHS** | File path/folder structure of original native file as it existed at the time of collection but subsequently removed as a duplicate.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) when duplicate copies were suppressed during processing. | Electronic files **and/or** emails, attachments (populated through processing) |

| | | |
|---|---|---|
| NATIVEFILE | Active link reflecting current filepath back to the native file | Electronic files **and/or** emails, attachments (populated through processing **and only provided if receiving native files**.) |
| FILEEXTEN | In the event of attachments **or** emails, this will enable us to search by **document** type. Sample contents: *PST, MSG, PDF, DOC, PPT, HTM*, etc. | Electronic files **and/or** emails, attachments (populated through processing) |
| FILESIZE | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing). |
| AUTHOR | In the event of attachments, this field contains the 'author' of the **document** | For Hard Copy **documents** (if coded) **or** electronic files **and/or** attachments (populated through processing) |
| HASH | MD5 Hash value for de-dupe | Electronic files **and/or** attachments (populated through processing) |
| CONVERSATION INDEX | Value that indicates the relative position of a message within a conversation thread. | Emails (populated through processing) |

10. <u>Production Format for Hard Copy Documents</u>. Hard copy documents will be scanned and processed as .tiff images with OCR. To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

11. <u>Encryption</u>. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

It is so ORDERED.

SIGNED on this 7th day of November, 2017.

Kenneth M. Hoyt
United States District Judge

## Appendix A
## Custodians [Time Range 1/1/2014 - 12/31/2016]

Art Acevedo [Chief of Police]

George Buenik [Executive Assistant Chief of Police]

John Chen [Assistant Chief of Police]

Patrick Dougherty [Lieutenant]

Paul Follis [Captain]

Charles McClelland [Chief of Police]

Martha Montalvo [Chief of Police]

Annise Parker [Mayor]

Stephen Spears [Captain]

Sylvester Turner [Mayor]

Colin Weatherly [Captain]

Charles Vazquez [Assistant Chief of Police]

Amanda Zimmerman [Sergeant]

# Appendix B
# Search Terms [Time Range 1/1/2014 - 12/31/2016]

15.17

14.06

arrest* w/50 policy

arrest* w/50 transfer

arrest* w/50 procedur*

arrest* w/50 warrant*

arrest* w/50 release

arrest* w/50 capacity

arrest* w/50 overcrowd*

book* w/50 procedure

book* w/50 policy

(chief OR "COP") w/50 policy

(chief OR "COP") w/50 transfer

(chief OR "COP") w/50 procedur*

(chief OR "COP") w/50 warrant*

(chief OR "COP") w/50 release

(chief OR "COP") w/50 capacity

(chief OR "COP") w/50 overcrowd*

drag* w/50 cancel*

drag* w/50 policy

drag* w/50 transfer

drag* w/50 procedur*

drag* w/50 warrant*

drag* w/50 release

drag* w/50 capacity

drag* w/50 overcrowd*

("Harris County" OR "Harris" OR "county") w/50 jail

("Harris County" OR "Harris" OR "county") w/50 "probable cause"

("Harris County" OR "Harris" OR "county") w/50 transfer

("Harris County" OR "Harris" OR "county") w/50 drag*

hold* w/s ("24 hours" OR "24 hrs")

hold* w/s ("48 hours" OR "48 hrs")

hold* w/s ("72 hours" OR "72 hrs")

hold* w/s day*

jail* w/50 overcrowd*

jail* w/50 oversight

jail* w/20 investigat*

jail* w/20 condition*

jail* w/50 misconduct

jail* w/50 complain*

jail* w/50 audit

mayor w/50 ("24 hours" OR "24 hrs")

mayor w/50 ("48 hours" OR "48 hrs")

mayor w/50 ("72 hours" OR "72 hrs")

mayor w/50 policy

mayor w/50 transfer

mayor w/50 procedur*

mayor w/50 warrant*

mayor w/50 release

mayor w/50 capacity

mayor w/50 overcrowd*

("probable cause" OR "PC") w/50 hearing

("probable cause" OR "PC") w/50 magistrate*

("probable cause" OR "PC") w/50 determin*

videolink w/50 hearing

warrantless w/50 (detain! OR detention)

warrantless w/50 custody

without /3 warrant AND (detain* or detention)

without w/3 (warrant AND custody)