UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN HERNANDEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-3577 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND FINDING ON SANCTIONS AND MOTIONS

**I.**

Before the Court are the plaintiffs' proposed statement of undisputed facts and the defendant's counter findings of fact and/or objections to the plaintiff's proposed statement. *See* [Des 76, 77 sealed]. The Court has examined the plaintiffs' proposed findings, in light of their motion for sanctions and determines them appropriate, and supported by the record of proceedings. Therefore, the Court adopts the plaintiffs' statement of finding, as modified, and rejects the City's finding that are not incorporated.

**II.**

*A.  The November 8, 2017 ESI Order*

On November 8, 2017, this Court entered the agreed Stipulation and Order Concerning Production of Electronically Stored Information, ECF Doc. No. 40 [hereinafter ESI Order], which was the product of four months of negotiations between the parties. The ESI Order prescribed a specific process for handling discovery in this case and states that "[t]he Parties shall conduct discovery in a cooperative manner, including . . . producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search

methodologies, and such other issues as may arise during the course of discovery." The ESI Order further provides that "[t]he parties shall apply agreed-upon search terms to custodian email as a mechanism to cull the volume of data subject to manual attorney review." The parties' agreed-upon search terms (henceforth the "ESI Order Search Terms") were attached to the ESI Order as Appendix B.

In addition to the agreed-upon search terms, the ESI Order imposed a continuing obligation on the parties "to disclose additional search terms if manual review or other investigation identifies words, abbreviations, or phrases that are necessary to gather records responsive to document requests." The ESI Order also defined the scope of discoverable sources of information, including "mainframe computers or local and network computers or drives or servers or any other media or location where ESI can be or is stored."

Finally, the ESI Order designated specific custodians—*i.e.*, Houston Police Department ("HPD") officials—whose records the plaintiffs were seeking, attached to the ESI Order as Appendix A. The thirteen custodians listed in Appendix A of the ESI Order were: Chief of Police Art Acevedo, Executive Assistant Chief of Police George Buenik, Assistant Chief of Police John Chen, Lieutenant Patrick Dougherty, Captain Paul Follis, Chief of Police Charles McClelland, Chief of Police Martha Montalvo, Mayor Annise Parker, Captain Stephen Spears, Mayor Sylvester Turner, Captain Colin Weatherly, Assistant Chief of Police Charles Vazquez, and Sergeant Amanda Zimmerman.

### B. *The City Violated the ESI Order (November 2017 – April 2018)*

Weeks after the Court entered an ESI Order, the City had still not supplemented the missing metadata from an earlier production to bring the production into compliance with the Court's Order. Though counsel engaged in several meet and confers by phone, the City's counsel repeatedly requested an in-person meeting in Houston.

On December 13, 2017, during an in-person meeting in Houston at which the parties discussed the City's technical issues relating to the production of arrest records, the City represented that (i) it had not interviewed any of the custodians listed in the ESI Order, (ii) it had not collected documents from any of the custodians listed in the ESI Order and (iii) it had "wiped" the hard drives of six custodians listed in Appendix B of the ESI Order who were no longer employed by the City

At that meeting, the plaintiffs offered to provide names of vendors to help with document processing and review and offered to pay a substantial portion, if not all, of the costs that might be incurred. The City refused this offer and missed its December 15, 2017 deadline to certify document production was complete.

On January 24, 2018, during a meet and confer, the City represented that it had collected 72,000 documents from the HPD database, but had yet to review them, despite the passage of the December 15, 2017 deadline for the completion of document discovery. Between January 24, 2018 and February 28, 2018, when the plaintiffs moved this Court to compel the City's production of documents, the City's only production of documents consisted of 126 files from the Mayor's office on February 2, 2018. Each of the 126 documents was unresponsive to the plaintiffs' document requests.

During the April 3, 2018 hearing on the plaintiffs' Motion to Compel, the City claimed it had collected 2.6 million documents by running "word searches based on the ESI Protocol," Ex. A at 22:9-15, and it would take 17,000 hours to review all of those documents. During the April 3 hearing, the City stated on numerous occasions that it had gathered documents based on the plaintiffs' request. When this statement was disputed, the City said it could provide the search parameters that were run, but stated that the protocol was the same ones that are in the ESI protocol. Based on these representations, the plaintiffs agreed at the hearing to provide a narrower set of search terms that would encompass only those documents related to RFPs 1–4, 8 and 9, and agreed to run the narrowed search terms as the plaintiffs requested.

### C. *The April 10, 2018 Order*

The Court's April 10, 2018 Order compelled the City to "produce all non-privileged documents responsive to the plaintiffs' requests for production nos. 1-4, 8 and 9 in accordance with the Court's November 8, 2017, ESI Order."

The Court further notified the City that

> [f]ailure to comply with this Order will result in sanctions, including but not limited to monetary sanctions and an adverse inference instruction to a jury that any hard drives not produced of former Chief of Police Charles McLelland, Chief of Police Martha Montalvo, Executive Assistant Chief George T. Buenik, Lieutenant Patrick Dougherty, Assistant Chief John Chen, and Assistant Chief Charles Vazquez, were intentionally destroyed and contained documents and communications establishing that: (a) throughout the class period, the City of Houston had a policy and/or practice of not releasing warrantless arrestees who had not received neutral determinations of probable cause within the constitutionally required period of time; (b) throughout the class period, policymakers were aware of this policy and/or practice; and (c) although aware of the policy and/or practice took no action to correct the unconstitutional conduct through fully aware that such inaction would continue an unconstitutional policy of deliberate indifference to a known constitutional violation.

*Id.* at 1–2.

The following day, on April 11, 2018, the plaintiffs provided the City with their list of narrowed search terms ("Plaintiffs' April 2018 Search Terms"). These search terms were identical to the ESI Order Search Terms except that four of the search terms were removed. The April 2018 Search Terms contained 55 individual terms. The Martinez Affidavit attests that when the City ran the ESI Order Search Terms, it retrieved 78,702 documents from the City's databases. When the City applied the plaintiffs' April 2018 Search Terms, it retrieved 48,976 documents. Instead of reviewing this set of documents, the City then asked HPD members to identify their own search terms.

As support for the City's Response to the plaintiffs' motion to enforce the April 10, 2018 Order, the City provided an affidavit from Joe Martinez, a systems support analyst at the City of Houston's Legal Department. ECF Doc. No. 62-1. The Martinez Affidavit attests that the City applied the HPD members' proposed search terms: the so-called "HPD Terms of Art," which consisted of 13 additional terms that were not disclosed to the plaintiffs until the filing of the City's response on June 8, 2018.

The 13 "HPD Terms of Art" were as follows: "holds," "48 hours," "afis," "drags," "daily stats," "county rejects," "cancelled drags," "daily shift population," "county transfer se," "county transfer central," "shift 2 count," "shift 1 count," and "shift 3 count." The 13 "HPD Terms of Art" retrieved 9,992 documents. It was these 9,992 documents that the City reviewed one by one for responsiveness. The City later admitted it never reviewed the remaining approximately 39,000 documents retrieved by the plaintiffs' April 11, 2018 Search Terms.

The City's production of all relevant documents responsive to RFPs 1–4, 8 and 9 was due April 30, 2018. On April 30, 2018, the plaintiffs received the City's production, containing

some 368 responsive documents. The City admitted that it only produced 368 responsive documents in response to the April 10, 2018 Order.

None of the 368 documents produced on April 30, 2018 contained documents from the disputed hard drives. Moreover, the April 30, 2018 production did contain several documents from Lieutenant Patrick Dougherty's "thumb drive"—a removable drive. It is unclear whether any of these documents originated from his computer hard drive. Each of the documents produced on April 30, 2018, and the vast majority of the documents the City has produced to date, are missing crucial metadata that the City is required to provide under the ESI Order.

The plaintiffs requested a meet and confer on May 16, 2018. During that May 16, 2018 meet and confer, the City admitted that it had not actually reviewed all of the documents retrieved by the plaintiffs' April 2018 Search Terms. Rather, the City represented to the plaintiffs that it had applied a different set of search terms—which it did not disclose to the plaintiffs during that call—in order to ease its production burden.

Upon questioning from the Court at the June 13, 2018 hearing, the City admitted that it had agreed to apply the ESI Order Search Terms, as narrowed by the plaintiffs' April 2018 Search Terms. Nonetheless, the City admitted that it had applied its own search terms instead— the 13 "HPD Terms of Art" mentioned in the Martinez Affidavit—to unilaterally narrow the scope of their document collection and review. The City also admitted that it applied the new search terms on its own, without conferring with the Court and without proposing a change in the terms to the plaintiffs or informing the plaintiffs of the new terms. The City's admission that it unilaterally changed the search terms constitutes a violation of the ESI Order.

### E. *The City Intentionally Destroyed Evidence*

On December 13, 2017, during an in-person meeting in Houston to discuss the City's technical issues relating to the production of arrest records, the City represented that it had wiped the hard drives of several custodians listed in Appendix B of the ESI Order, who were no longer employed by the City. On December 14, 2017, the plaintiffs asked the City to identify "which custodians [listed in the ESI Order] are no longer employed by the City. On December 18, 2017, the City's counsel, Connica Lemond, identified those six custodians as Chief of Police Charles McClelland, Chief of Police Martha Montalvo, Executive Assistant Chief George T. Buenik, Assistant Chief John Chen, Lieutenant Patrick Dougherty and Assistant Chief Charlie Vazquez. Those hard drives contained ESI that should have been preserved by the City as soon as it anticipated litigation, and definitely after the instant lawsuit was filed. The City acknowledged its "clear obligation" to preserve all responsive documents after the litigation was pending. Yet the City failed to take reasonable steps to preserve the data on the hard drives and intentionally wiped the drives. The Court determines that the information on the hard drives cannot be restored or replaced through additional discovery.

In connection with its response to the plaintiffs' motion to compel and for discovery sanctions, the City provided the affidavit of Gregory Banks, which detailed certain HPD document policies (the "Banks Affidavit"). ECF Doc. No. 51-4. The Banks Affidavit confirmed that HPD employees' computer hard drives are "re-imaged and re-issued as necessary" when the employee leaves the department. It also stated that documents saved to only a personal hard drive "only reside" on the personal hard drive. The City admitted that any reimaging of hard drives "would have wiped out anything" from the time period relevant to this litigation. The Court concludes that litigation hold was not properly issued in this case.

On April 26, 2018, the City emailed the plaintiffs' counsel saying that it was "sending a disk containing everything to you by FedEx/USPS so that you can have everything in hand by 4/30." When the plaintiffs requested clarification on what the City meant by "everything" and whether that included documents from the hard drives, the City responded on April 27, 2018, saying that "the production we sent you does satisfy the requirement that the responsive, non-privileged documents that *would be* on the hard drives of those individuals named in the judge's order. [sic]"

The City further represented that:

> ***No responsive documents were found on the hard drives*** of the chiefs. Furthermore, in an abundance of caution, we reached out to the chiefs to ensure that we were looking at all of the areas that would have responsive documents. After speaking to each of the chiefs (as suggested by Judge Hoyt), it was clear that they saved documents on the shared drives for HPD and not their individual hard drives.

*Id.* (emphasis added).

In response, the plaintiffs' counsel requested "the date and time of the conversations [the City's counsel] had with the former City officials in question, as well as the names of all individuals who participated in those conversations." The City returned with this list of the custodians and the dates and times of its conversations with each custodian:

| Name of Contact | Date of Contact | Time of Contact | Participants |
|---|---|---|---|
| Chief of Police Charles McClelland | April 23, 2018 | 11:00 a.m. | Connica Lemond and Chief McClelland |
| Chief of Police Martha Montalvo | April 27, 2018 | 11:38 a.m. | Connica Lemond and Chief Montalvo |
| Executive Asst. Chief George T. Buenik[1] | April 27, 2018 | 4:55 p.m. | Connica Lemond and Chief Buenik |
| Lt. Patrick Dougherty | December 21, 2017 | 1:00 p.m. | Connica Lemond, Lt. Dougherty, and Melissa Spinks |
| Asst. Chief John Chen | April 13, 2018 | 12:53 p.m. | Connica Lemond and Chief Chen |
| Asst. Chief Charles Vasquez | April 23, 2018 | 11:19 a.m. | Connica Lemond and Chief Vasquez |

At the June 13, 2018 hearing, the Court noted that the City's counsel's conversations with HPD officials, unsupported by sworn affidavits, were insufficient to establish the absence of responsive documents on the wiped hard drives. The Court determined that the City has failed to comply with the Court's orders and directed the plaintiffs' counsel to prepare proposed findings of fact and a proposed remedy.

### F. The City Made Misrepresentations to the Court About Its Flawed Discovery Process

#### 1. The City represented that it needed to review 2.6 million documents

In the City's Response to the plaintiffs' motion to compel, the City claimed that the plaintiffs' discovery requests were disproportionate to the needs of the case, representing that the City had collected 2.6 million documents in response to the requests. Again, during the April 3, 2018 hearing on the plaintiffs' motion to compel, the City claimed that it had collected 2.6 million documents by running "word searches based on the ESI Protocol," Ex. A at 22:9–15, and that it would take 17,000 hours to review these documents.

During the April 3, 2018 hearing, the City stated numerous times that it had "collected based on what the plaintiffs told us to collect." The plaintiffs noted their lack of visibility into the City's search process, *see, e.g.*, *id.* at 39:19–21 ("[W]e really don't understand the 2.6 million number; but we do not expect from our experience that it should be that high."). To this remark, the Court suggested that the City was "creating a problem and then . . . . taking advantage of the problem . . . [by] creating a vastness of documents and then saying, 'Ah, proportionality.' You can't have it both ways." *Id.* at 29:14–17. In response, the City said it could "provide the search parameters that were run . . . to the plaintiffs' counsel, but it's the same ones that are in the ESI protocol." *Id.* at 44:16–18; *see also id.* at 55:2–7 (the City again claimed that the search terms that generated 2.6 million documents were those contained in Appendix B

of the ESI Order). These statements contradict the Martinez Affidavit that shows that when the City actually ran the ESI Order Search Terms, the terms retrieved only 78,702 documents. The City has failed to explain which search terms elicited 2.6 million documents.

In fact, the Martinez Affidavit lists yet another set of search terms run by the City and does not indicate how many documents these terms generated, suggesting these may be those terms. Pursuant to these search terms, the City searched documents for words like "24," "arrest," "chief," "county," "day," "mayor," and "without" with no search delimiters. *Id*. at 2–3. The search terms listed in Paragraph 5 of the Martinez Affidavit were not the ESI Order Search Terms or the plaintiffs' April 2018 Search Terms. *Compare* ECF Doc. No. 62-1, at 2–3, *with* ECF Doc. No. 40 at app. B, *and* ECF Doc. No. 59-3.

### 2. *The City did not review the 78,702 documents generated by the plaintiff's April 2018 search terms.*

According to the Martinez Affidavit, it was only after winnowing the document population to 9,992 using the 13 "HPD Terms of Art" that the City reviewed each document for responsiveness. ECF Doc. No. 62-1, at 6. Contrary to the Martinez Affidavit, the City represented to this Court that the City attorneys had reviewed each of the 78,702 documents retrieved by the ESI Order Search Terms. Ex. B at 18:11–12 ("So the 76,000 documents were reviewed one by one by the attorneys in the office."). Upon being reminded by the plaintiffs' counsel of the contents of the Martinez Affidavit, the City's counsel then reversed her position and clarified that the City had only reviewed the 9,992 documents individually for responsiveness. *Id.* at 23:8–24:9.

### 3. *The City represented that it had issued a litigation hold.*

The City had previously claimed that it "sent out a litigation hold" when the plaintiffs initially filed suit. Ex. A at 24:2–4; *see also* ECF Doc. No. 47-10, at 2. However, this appears to

be contradicted by the Banks Affidavit. The Banks Affidavit indicated that the City had not issued a litigation hold notice to any City employees, stating, "Currently, all HPD email is archived indefinitely, so there has been no need to actually put a hold on any employee's email." ECF Doc. No. 51-4 at 2.

    4.  *The City obfuscated the status of the hard drives*

At the April 3, 2018 hearing on the plaintiffs' motion to compel, the City informed the Court that it had no reason to believe any relevant documents had been destroyed even though it had not reviewed any documents on the relevant hard drives. Ex. A at 25:19–22. The City went further, informing the Court that it could still search and produce the data on the hard drives it had previously represented were wiped. *Id.* at 48:24–25 ("We will have our people go through each person's hard drive."). Then, on April 26, 2018, the City represented that its last production, produced in response to the Court's April 10, 2018 Order, contained "everything" responsive to the RFPs listed in the Order. ECF Doc. No. 59-7.

When the plaintiffs requested clarification on what the City meant by "everything," the City responded on April 27, 2018, saying that "the production we sent you does satisfy the requirement that the responsive, non-privileged documents that would be on the hard drives of those individuals named in the judge's order. [sic]" ECF Doc. No. 59-7. The City further represented that "[n]o responsive documents were found on the hard drives of the chiefs." ECF Doc. No. 59-7, Apr. 27, 2018 Email from C. Lemond.

At the June 13, 2018 hearing, the City admitted that each of the six hard drives was indeed wiped clean after the litigation commenced, Ex. B at 32:11–33:7, contrary to its representations at the prior hearing and to the plaintiffs, *see supra*, ¶¶ 89–91. The City

confirmed there were no longer any documents on those hard drives from the relevant time period. Ex. B at 35:17–23.

### III.

It is clear to the Court and the Court concludes that the City's representation to the Court that it would "have our people go through each person's hard drive," Ex. A at 48:24–25, and that the City's representation to the plaintiffs that "[n]o responsive documents were found on the hard drives of the chiefs," ECF Doc. No. 59-7, were deliberate mischaracterizations. The City's actions as found, heretofore, were intentional or the result of deliberate indifference. The City knew well that the evidence existed, that it was material to this litigation and that spoliation was an affront to discovery rules and the Court's order. The affirmative acts that caused the spoliation found has not been credibly explained.

Federal Rule of Civil Procedure 37(b)(2) provides that an order establishing contested facts as true is an appropriate remedy when a party violates a discovery order. *See* Rule 37(b)(2)(i)-(ii). This type remedy cures the violation without inflicting additional costs on the parties, and for that reason, the Court determines, in its discretion that entering an adverse inference finding is appropriate. *See Compaq Comput. Corp. v. Ergonome Inc.,* 387 F.3d 403, 413 (5th Cir. 2004).

Therefore, the Court HOLDS that the following inference is appropriate based on the City's conduct:

> It is established that (a) throughout the class period, the City of Houston had a policy of not releasing warrantless arrestees who had not received neutral determinations of probable cause within the constitutionally required period of time; (b) throughout the class period, the City's policymakers were aware of this policy; and (c) the City's policymakers acted with deliberate indifference to the unconstitutional policy and the constitutional violations that resulted.

It is so Ordered.

SIGNED on this 30th day of August, 2018.

_____
Kenneth M. Hoyt
United States District Judge