**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

<table>
<tr><td>

JUAN HERNANDEZ, DEQUAN KIRKWOOD, MANUEL TREVINO, KENT WHEATFALL, and ERIC AGUIRRE on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.

THE CITY OF HOUSTON, TEXAS,

    Defendant.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

Case No. 16-CV-3577
(Class Action)

Jury Trial Demand

</td></tr>
</table>

**[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. Houston police make hundreds of warrantless arrests every week. The Fourth Amendment to the United States Constitution and Texas state law require that anyone arrested without a warrant be released promptly—after 48 hours at the longest—unless a neutral magistrate has concluded that there was probable cause for her arrest and continued detention. Houston has a policy and practice of disregarding this simple obligation. Whenever the Harris County Jail (where Houston sends warrantless arrestees for probable cause hearings) refuses to accept custody of an arrestee, or whenever Houston's own arrest procedures are delayed, Houston continues to detain arrestees in its jail cells without a neutral finding of probable cause rather than release them after 48 hours as the Constitution requires. Publicly available arrest records and booking data show that in 2015 and 2016 the City detained thousands of individuals beyond the constitutionally permissible time without ensuring that they received prompt probable cause hearings.

## II. NATURE OF THE ACTION[1]

2.      The City of Houston arrests hundreds of people each week without a warrant. Misdemeanor and felony arrestees in City custody who do not post bail are eventually transferred to the Harris County Jail, where they receive probable cause hearings conducted by video. As a matter of policy and practice, the City of Houston does not provide probable cause determinations for warrantless arrestees in its custody. Probable cause determinations are provided only after an arrestee has been transferred to the Harris County Jail. When it takes longer than 48 hours to transfer an arrestee to Harris County—and it often does—Houston, as a matter of policy and practice, continues to detain the arrestee unlawfully rather than release him as the Fourth Amendment requires. Plaintiffs, on behalf of themselves and all others similarly situated, seek compensatory damages for Houston's policy of detaining warrantless arrestees in violation of the United States Constitution and state law.

## III. JURISDICTION AND VENUE

3.      This is a civil rights action arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

5.      This Court has supplemental jurisdiction over the state law causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claim.

---

[1] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they had personal involvement and on information and belief as to all other matters.

IV. **PARTIES**

6.      Named Plaintiff Juan Hernandez is a resident of Houston, Texas.

7.      Named Plaintiff DeQuan Kirkwood is a resident of Houston, Texas.

8.      Named Plaintiff Manuel Trevino is a resident of Katy, Texas.

9.      Named Plaintiff Kent Wheatfall is a resident of Houston, Texas.

10.     Named Plaintiff Eric Aguirre is a resident of Houston, Texas.

11.     Defendant City of Houston is a municipal corporation organized under the laws of the State of Texas.  It is the most populous city in Texas and is located in Harris County, the most populous county in the state.  The City of Houston operates the Houston Police Department ("HPD") and the City of Houston Jail ("Houston Jail").

V. **THE CONSTITUTIONAL AND STATUTORY RIGHT TO A PROMPT PROBABLE CAUSE HEARING**

12.     The Fourth Amendment "requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 47 (1991). "[A]s a general matter," the Supreme Court has explained, "judicial determinations of probable cause within 48 hours of arrest will . . . comply" with the Fourth Amendment. *Id.* at 56.  The United States Court of Appeals for the Fifth Circuit has similarly explained that probable cause determinations made "[b]eyond 48 hours after arrest" can be justified only by "the existence of a bona fide emergency or other extraordinary circumstance." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012).

13.     The right to a probable cause determination within at most 48 hours of arrest is not only enshrined in the United States Constitution, it is also guaranteed by numerous other state and local rules.  For example, the Texas Code of Criminal Procedure requires that "*the person making the arrest* or the person having custody of the person arrested *shall without unnecessary delay, but*

*not later than 48 hours* after the person is arrested, take the person arrested or have him taken before some magistrate of the county where the accused was arrested *or,* to provide more expeditiously to the person arrested . . . *before a magistrate in any other county* of this state." Tex. Code Crim. Proc. §§ 14.06(a), 15.17(a). It is the arresting authority's duty to ensure that a warrantless arrestee receives a probable cause hearing before a magistrate within 48 hours.

14. In the event that a prompt probable cause hearing has not been provided, Texas state law mandates the release of the arrestee, stating, "a person who is arrested without a warrant and who is detained in jail *must be released . . . not later than the 48th hour* after the person's arrest if the person was arrested for a felony and a magistrate has not determined whether probable cause exists to believe that the person committed the offense." Tex. Code Crim. Proc. § 17.033(b).

15. With respect to persons arrested for misdemeanors in counties that have over 3 million residents—Harris County has approximately 4.1 million residents—Texas state law imposes an even stricter requirement, providing that "a person . . . arrested without a warrant and who is detained in jail *must be released . . . not later than the 24th hour* after the person's arrest if the person was arrested for a misdemeanor and a magistrate has not determined whether probable cause exists to believe that the person committed the offense." Tex. Code Crim. Proc. § 17.033(a).

16. The Rules of the Harris County Criminal Courts also require the arresting authority to ensure a neutral probable cause determination within 48 hours of arrest. In particular, they obligate "[t]he arresting officer, or the person having custody of the arrestee, [to] ensure that every arrestee . . . be brought before a judicial officer without unnecessary delay, but not later than 48 hours after the person is arrested." Harris Cnty. Crim. Ct. Rule 24.2.1 (2017).

17.     The Harris County local rules expressly permit probable cause hearings to occur remotely, using "high-speed, two-way audio/video transmission technology." Harris Cnty. Crim. Ct. Rule 4.2.1 (2017).

18.     In addition to the numerous state and local provisions requiring a prompt probable cause hearing, the United States District Court for the Southern District of Texas has previously enjoined the City of Houston to ensure that arrestees receive prompt probable cause determinations. This Court, after a trial in 1982, found that Houston's policy of "detain[ing] arrestees on 'investigative holds' violates the Fourth and Fourteenth Amendments to the United States Constitution . . . and Articles 14.06 and 15.17 of the Texas Code of Criminal Procedure." *Sanders v. City of Houston*, 543 F. Supp. 694, 696 (S.D. Tex. 1982), *aff'd* 741 F.2d 1379 (5th Cir. 1984). To remedy the City of Houston's constitutional and state law violations, this Court "permanently enjoined" the "City of Houston, its agents and employees . . . from detaining anyone arrested without a warrant *for a period of more than twenty-four (24) hours* without taking the person before a judicial officer for a determination of probable cause" and further ordered "that routinely every effort should be made to effect such procedures within a lesser period of time." *Id.* Twenty-five years later, it is clear that—despite this Court's order—the City of Houston is not living up to its obligations to comply with the Fourth Amendment.

## VI.    THE CITY OF HOUSTON'S POLICIES AND PRACTICES CAUSE RAMPANT VIOLATIONS OF THE RIGHT TO A PROMPT PROBABLE CAUSE DETERMINATION BY A NEUTRAL MAGISTRATE

19.     Approximately 80,000 people were arrested by the City of Houston in 2014 and 2015; almost 90 percent of those people were arrested without a warrant.

20.     As a matter of policy and practice, the City transfers felony and misdemeanor arrestees to the Harris County Jail for booking if they are unable to immediately pay a money bail amount set by a predetermined schedule. Harris County then assembles groups of arrestees to

appear before a Harris County Hearing Officer for a probable cause hearing. These hearings primarily occur by video link: the arrestees remain in the Harris County Jail, and a hearing officer and an assistant district attorney participate from a room in the courthouse. These probable cause hearings are conducted many times per day, throughout the day, every day of the year. The assistant district attorney reads the alleged facts supporting the charges against the arrestee, and the hearing officer determines whether there was probable cause for the arrest. Harris County does not combine the probable cause hearing with other pretrial proceedings or the appointment of counsel.

21.     As a matter of policy and practice, judicial determinations of probable cause for warrantless arrests are not conducted while an individual is in the City of Houston's custody. They take place only after an arrestee has been transferred to the Harris County Jail.

22.     Therefore, any individual arrested without a warrant who remains in the City of Houston's custody has not had a judicial determination of probable cause.

23.     As a matter of policy, custom, or practice, the City does not release people who do not pay bail, even if 48 hours or more have passed since their arrest.[2]

24.     Upon information and belief, Houston Mayor Sylvester Turner and Chief of Police Art Acevedo have long been aware of this policy, custom, or practice, and through their awareness and inaction, have officially adopted and executed it on behalf of the city. Former Mayor Annise Parker (2010–2016) and Former Chiefs of Police Charles McClelland (2010–February 2016) and Martha Montalvo (February–December 2016) were also aware of this policy, custom, or practice, and adopted and executed it as well.

---

[2]     Houston releases all arrestees who can pay predetermined financial conditions of release immediately. It keeps in detention only those who are unable to afford release. At no point do City officials conduct any inquiry into whether arrestees have the ability to pay the predetermined amount of money required for release.

25.     The Harris County Jail is notoriously overcrowded.[3]  Both the Houston Chronicle and the Houston Press reported that the County has experienced extreme overcrowding since at least 2007, when "overcrowding prompted then-Sheriff Tommy Thomas to ship more than 600 inmates to lock-ups in Louisiana." Two years later, in 2009, "then-Sheriff Adrian Garcia sent buses of inmates to facilities in Texas and Louisiana due to the overcrowding." Those transfers "continued through 2012," and spiked again in 2015, when the jail found itself at "95 percent of its 9,400-bed capacity."[4]

26.     The overcrowding continued through 2016.  In July and August 2016, the situation was so dire that Harris County told HPD to stop transferring inmates to the County Jail, and refused to accept busloads of inmates from the Houston Jail.  As a spokesman for Harris County explained, "[w]e couldn't keep up with the rate of people we had coming here."  There was, as he put it, "[n]o room at the inn — that's literally the phrase that we use."  The Harris County spokesman also stated that, due to the overcrowding and other issues causing delay, at one point, the average time

---

[3]     *See, e.g.*, Michael Barajas, *Why the Harris County Jail is Overcrowded with Legally Innocent People*, Houston Press (July 1, 2015), *available at* http://www.houstonpress.com/news/why-the-harris-county-jail-is-overcrowded-with-legally-innocent-people-7555627; St. John Barned-Smith, *Inmates transferred, jails overcrowded*, Houston Chronicle (Apr. 17, 2016), *available at* http://www.houstonchronicle.com/news/houston-texas/houston/article/Inmates-transferred-jails-overcrowded-7251977.php; Meagan Flynn, *Nearly 200 People Have Died in Harris County Sheriff's Office Custody in 10 Years*, Houston Press (Aug. 1, 2016), *available at* http://www.houstonpress.com/news/nearly-200-people-have-died-in-harris-county-sheriffs-office-custody-in-10-years-8616676; Meagan Flynn, *The Harris County Jail Got So Crowded the Sheriff Delayed Inmate Transfers*, Houston Press (September 8, 2016), *available at* http://www.houstonpress.com/news/the-harris-county-jail-got-so-crowded-the-sheriff-delayed-inmate-transfers-8745391; Meagan Flynn, *Harris County Sheriff May Hand Over 17-Year-Olds to Private Prison Contractor*, Houston Press (Sept. 29, 2016), *available at* http://www.houstonpress.com/news/harris-county-sheriff-may-hand-over-17-year-olds-to-private-prison-contractor-8812196.

[4]     St. John Barned-Smith, *Inmates transferred, jails overcrowded*, Houston Chronicle (Apr. 17, 2016); Michael Barajas, *Why the Harris County Jail is Overcrowded with Legally Innocent People*, Houston Press (July 1, 2015).

for inmates to be transferred from the Houston Police Department Jail to the Harris County Jail was "36 to 72 hours."[5]

27.    In November 2016, the Houston Chronicle reported that, as a result of the persistent overcrowding, the Texas Commission on Jail Standards approved a request from Harris County "to let nearly 200 inmates sleep on plastic cots on the floor" while "warning that the county needs to think ahead about how to reduce its inmate population before its over-crowded jail system worsens." The Houston Chronicle went on to explain that "Harris County Sheriff Ron Hickman said additional beds are needed because the jail population has ballooned from 8,500 inmates daily to 9,400 last month." Throughout this period, Harris County continued to send hundreds of detainees to other county jails and to refuse transfers from the Houston Jail.[6]

28.    The City of Houston and its chief policymakers, including the Mayor and Chief of Police at all times relevant to this class action, have long been aware of these delays and the constitutional violations that result.

29.    In fact, Mayor Sylvester Turner himself has publicly acknowledged the significant overcrowding at the Harris County Jail. A report published by Mayor Turner in March 2016 stated that "the Harris County Jail is woefully overcrowded," and that "Harris County is notorious for needlessly jailing Houstonians pretrial."[7]

---

[5]    Meagan Flynn, *The Harris County Jail Got So Crowded the Sheriff Delayed Inmate Transfers*, Houston Press (Sept. 8, 2016), *available at* http://www.houstonpress.com/news/the-harris-county-jail-got-so-crowded-the-sheriff-delayed-inmate-transfers-8745391.

[6]    Andrea Zelinski, The Houston Chronicle, *Jail commission approves COT plan request* (Nov. 4, 2016), *available at* http://www.houstonchronicle.com/news/politics/houston/article/Jail-commission-OKs-county-request-for-temporary-10592050.php.

[7]    Mayor Sylvester Turner, Transition Committee on Criminal Justice (Mar. 1, 2016), *available at* https://www.houstontx.gov/mayor/transitionreports/criminal_justice.pdf.

30.     Even though the City of Houston and its key policymakers know that the Harris County Jail is over capacity, the HPD still waits to transfer warrantless arrestees to the Harris County Jail for probable cause hearings rather than release them after 48 hours or bring them to a different county for a prompt hearing.

31.     Due to the ongoing issues in Harris County, the City of Houston and its policymakers are also aware that a transfer to Harris County slightly before the 48-hour mark is unlikely to result in a timely probable cause hearing. But they detain people in these circumstances nonetheless, despite knowing of the constitutional and statutory violations that result.

32.     Furthermore, the City of Houston remains under a federal court injunction requiring it to bring warrantless arrestees before a magistrate within 24 hours of arrest for a neutral determination of probable cause. The City and its chief policymakers are, therefore, on notice that there is a problem with their pre-trial detention system as a matter of law, and act with deliberate indifference to the Plaintiffs' constitutional rights by allowing these unlawful detentions to continue.

33.     This policy, custom, or practice—which has remained unchanged despite the injunction—has the inevitable and foreseeable result that numerous individuals arrested by the HPD without a warrant are denied their constitutional and statutory right to a prompt probable cause hearing.

34.     Plaintiffs' analysis of the County's public booking records shows that between January 1, 2016, and July 15, 2016, over 1,400 arrestees were held in Houston's City Jail for over 72 hours, and thousands more were held for over 48 hours.  The Houston Press reported that in

July and August 2016, over 1,000 inmates waited over 72 hours before being transferred to Harris County in those two months alone.[8]

35.     Approximately 90% of arrests in Houston are made without warrants.  Harris County's publicly available data, therefore, indicates that hundreds, if not thousands, of individuals were held unlawfully in 2015 and 2016, and were denied their right to a neutral and prompt determination of probable cause.

36.     The large number of illegal detentions in 2015 and 2016 reflects the City of Houston's broad, longstanding, and consistent policy of refusing to release warrantless arrestees even if more than 48 hours have passed since their warrantless arrest.  For example, booking records show that one person arrested on July 25, 2016, did not receive a probable cause determination until July 31, 2016 (more than 144 hours after arrest); another person, arrested on July 23, 2016, did not receive a probable cause determination until July 30, 2016 (more than 168 hours after arrest); and at least 35 other people in the months of July and August 2016 waited more than four days (96 hours) between arrest and a probable cause determination.

37.     Nor has the City of Houston taken any other steps to ensure that individuals its Police Department arrests without a warrant receive their constitutional and statutory right to a prompt probable cause hearing.  The City of Houston has authority, under the Texas Code of Criminal Procedure, to have arrestees taken "before a magistrate in *any other county of this state*" in order to ensure a prompt probable cause hearing.  *See* Tex. Code Crim. Proc. §§ 14.06(a), 15.17(a).  According to the Texas Jail Project, there are 273 county jails in Texas.  Many are a short drive from the Harris County Jail, including the Montgomery County Jail in Conroe, Texas

---

[8]     Meagan Flynn, *The Harris County Jail Got So Crowded the Sheriff Delayed Inmate Transfers*, Houston Press (September 8, 2016),  *available at* http://www.houstonpress.com/news/the-harris-county-jail-got-so-crowded-the-sheriff-delayed-inmate-transfers-8745391.

(1 hour), the Walker County Jail in Huntsville, Texas (1.5 hours), and the Washington County Jail in Brenham, Texas (1.5 hours). But, ignoring widespread deprivations of Fourth Amendment rights, the City of Houston does not utilize this provision and instead transfers all of its warrantless arrestees to the Harris County Jail, exclusively.

38.     Knowingly keeping arrestees beyond the constitutionally required time, or in the alternative transferring them to Harris County after a substantial delay with no expectation that they will receive a prompt hearing, demonstrates a deliberate indifference to the arrestees' constitutional rights.

39.     Houston's policy, custom, or practice of continuing to detain arrestees after they have failed to receive prompt probable cause determinations is the moving force and direct cause of Plaintiffs' unreasonable detentions, and is the moving force of the deprivation of their constitutional rights.

40.     This persistent and widespread practice in the City of Houston continues despite the City of Houston's awareness that the obvious consequence of this practice is the systematic denial of constitutional rights to individuals in its custody. Specifically, the Mayor and Chief of Police at all relevant times were aware of the policy, custom or practice, had actual or constructive knowledge that it was the moving force behind the violation of numerous individuals' constitutional rights, and executed the policy, custom, or practice nonetheless.

### **DeQuan Kirkwood**[9]

41.     On July 25, 2016, DeQuan Kirkwood drove to visit his probation officer.

42.     When he arrived, Houston police officers arrested Mr. Kirkwood for evading arrest with a vehicle.

---

[9]     Mr. Kirkwood's first name is misspelled as "DeJuan" in some of his records.

43.     Mr. Kirkwood's arrest was entered into the City of Houston's and Harris County's electronic records at 11:15 PM on July 25, 2016.

44.     According to Harris County's publicly available records, on July 28, 2016, at 1:23 AM, more than 50 hours later, Mr. Kirkwood was transferred to Harris County custody.

45.     The City's delay in bringing Mr. Kirkwood to the Harris County Jail was unreasonable and not justified by extraordinary circumstances.

46.     At 7:00 AM on July 28, 2016—more than 55 hours after his arrest—Mr. Kirkwood appeared for his probable cause hearing.

47.     The judge found there was no probable cause for Mr. Kirkwood's arrest and continued detention. Mr. Kirkwood was promptly released.

### **Manuel Trevino**

48.     On July 27, 2016, Manuel Trevino was visiting a friend's house when the Houston Police arrived and searched the house without a warrant.  The police found narcotics in the home and arrested Mr. Trevino along with others in the house.

49.     Mr. Trevino's arrest was entered into the City of Houston's and Harris County's electronic records at 1:55 PM on July 27, 2016.

50.     According to Harris County's publicly available records, on July 30, 2016, at 10:42 PM, Mr. Trevino was booked into Harris County custody.  He had been detained in Houston custody for almost 81 hours without receiving a probable cause hearing.

51.     According to the City's arrest data, Mr. Trevino was released from the City's custody on July 30, 2016, at 9:39 PM, almost 80 hours after his arrest.

52.     The City's delay in bringing Mr. Trevino to the Harris County Jail was unreasonable and not justified by extraordinary circumstances.

53.     On July 31, 2016, at 10:00 PM, a judge found probable cause for his arrest and continued detention—almost 104 hours after his arrest.

54.     On October 28, 2016, Mr. Trevino pleaded guilty and received a deferred adjudication. He was not sentenced to any jail time, and his sentence was not credited with any time he spent in pre-trial custody.

### Kent Wheatfall

55.     Kent Wheatfall is a retired U.S. Postal Service worker.

56.     On January 7, 2016, Mr. Wheatfall was arrested for aggravated assault.  Mr. Wheatfall's arrest was entered into the City of Houston's and Harris County's electronic records at 10:30 PM on January 7, 2016.

57.     According to Harris County's publicly available records, on January 10, 2016, at 1:52 AM, Mr. Wheatfall was booked into Harris County custody. He had been in Houston custody for more than 51 hours.  At 4:00 AM that day—more than 53 hours after his arrest—Mr. Wheatfall received a probable cause hearing, where a judge found probable cause for his arrest and continued detention.

58.     The City's delay in bringing Mr. Wheatfall to the Harris County Jail was unreasonable and not justified by extraordinary circumstances.

59.     On February 4, 2016, Mr. Wheatfall was released on bond.  He was indicted on February 18, 2016.

60.     On May 17, 2016, Mr. Wheatfall was rearrested and could not post bond.  He was held until he pleaded guilty and received a deferred adjudication on February 10, 2017.  He was not sentenced to any jail time, and his sentence was not credited with any time he spent in pre-trial custody.

## Juan Hernandez

61.     On January 7, 2016, at about 4:30 PM, Houston police officers arrested Juan Hernandez, without a warrant, for misdemeanor assault.

62.     Mr. Hernandez's arrest was entered into the City of Houston's and Harris County's electronic records at 4:53 PM on January 7, 2016.

63.     When Mr. Hernandez was brought to the Houston City Jail, a jail employee there told him that the Harris County Jail was full and that his transfer to Harris County would be delayed. She told Mr. Hernandez to "be patient."

64.     Later on, Mr. Hernandez saw a Houston City Jail employee that he knew. The employee said: "You still here? You should've been gone by now."

65.     According to Harris County's publicly available records, on January 10, 2016, at 12:49 AM, Mr. Hernandez was booked into County custody without having received a probable cause hearing—almost 56 hours after his arrest.

66.     Mr. Hernandez remembers being held for three days in the Houston City jail.

67.     Harris County's records reflect that Mr. Hernandez received a probable cause hearing before a judge on January 9, 2016, at 6:00 PM—more than 49 hours after his arrest.

68.     The City's delay in bringing Mr. Hernandez to the Harris County Jail was unreasonable and not justified by extraordinary circumstances.

69.     Five days after his hearing—after a week in custody—Mr. Hernandez pleaded guilty. He was released and given community supervision without jail time.

## Eric Aguirre

70.     On March 10, 2018, at about 12:00 PM or 1:00 PM, Houston police offers arrested Eric Aguirre, without a warrant, for assaulting a family member.

71.     Mr. Aguirre's arrest was entered into Harris County's electronic records at 1:15 PM on March 10, 2018.

72.     While in Houston custody, Mr. Aguirre was told that the reason that the jail was so crowded was because the Harris County Jail was too full.

73.     According to Harris County's publicly available records, on March 12, 2018, at 4:49 AM, Mr. Aguirre was booked into Harris County custody. He had been in Houston custody for more than 39 hours.

74.     Mr. Aguirre remembers being brought to the courthouse around 10:00 AM on March 12, 2018 but having to wait with around nine other arrestees and not appearing before a judge until 8:00 or 9:00 PM that night—approximately 55 hours after his arrest.

75.     Harris County's records reflect that Mr. Aguirre received a probable cause hearing before a judge on March 12, 2018, at 10:00 AM—more than 44 hours after his arrest.

76.     The City's delay in bringing Mr. Aguirre to the Harris County Jail was unreasonable and not justified by extraordinary circumstances.

77.     On March 14, 2018, Mr. Aguirre was released on $3,000.00 bond.

78.     On July 26, 2018, a judge dismissed the charges.

## VII.    CLASS ACTION

79.     The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

80.     A class action is a superior means, and the only practicable means, by which the named Plaintiffs and unknown Class Members can challenge the City's unlawful detention policy.

81.     This action is brought and may properly be maintained as a class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

82.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

83.     The named Plaintiffs propose two classes seeking compensatory relief.

84.     The first subclass is defined as: All persons who were arrested without a warrant by the City of Houston and held for 48 hours or more without a prompt judicial determination of probable cause at any time between December 6, 2014 (two years before the filing of this Complaint) and the date of the order granting class certification.[10]

85.     The second subclass is defined as: All persons who were arrested without a warrant by the City of Houston and held for more than 24 hours and less than 48 hours without a prompt judicial determination of probable cause at any time between December 6, 2014 (two years before the filing of this Complaint) and the date of the order granting class certification.

**A.      Numerosity. Fed R. Civ. P. 23(a)(1)**

86.     The individuals in the class are so numerous that joinder of all members would be impractical.

87.     Harris County's public booking records show that between January 1, 2016, and July 15, 2016, over 1,400 arrestees were held in Houston's City Jail for over 72 hours, and that thousands more were held over 48 hours.  Thousands more were held over 24 hours.  The Houston Press separately concluded that in July and August 2016 alone over 1,000 inmates waited more than 72 hours before being transferred to Harris County.[11]

---

[10]     The statute of limitations for both claims is two years. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

[11]     Meagan Flynn, *The Harris County Jail Got So Crowded the Sheriff Delayed Inmate Transfers*, Houston Press (September 8, 2016), *available at* http://www.houstonpress.com/news/the-harris-county-jail-got-so-crowded-the-sheriff-delayed-inmate-transfers-8745391.

88.     Publicly available data shows that violations occurred throughout 2016 and have not abated. Thousands of arrestees were likely subjected to this policy during the class period. Because joinder of thousands of plaintiffs would be impracticable, this case satisfies the numerosity requirement.

**B.      Commonality. Fed. R. Civ. P. 23(a)(2)**

89.     The relief sought is common to all Class Members, and common questions of law and fact exist as to all Class Members.  The named Plaintiffs seek relief concerning whether the City of Houston's policies, practices, and procedures violated the rights of the Class Members.

90.     Common legal and factual questions arise from one central scheme: the City's policy of detaining warrantless arrestees beyond 48 hours when there has not been a probable cause determination by a neutral magistrate.  The City of Houston has operated this policy openly and in materially the same manner every day during the class period.  The resolution of these legal and factual issues will determine whether all of the Class Members are entitled to the relief that they seek.

91.     There are questions of law and fact common to all Class Members.  Among these common questions are:

    a.     Whether it violates the United States Constitution to detain warrantless arrestees for unreasonable periods of time, including in excess of 48 hours, without a judicial determination of probable cause for the detention;

    b.     Whether it violates state law to detain warrantless arrestees for unreasonable periods of time, including in excess of 48 hours, without a judicial determination of probable cause for the detention;

    c.     Whether the City of Houston maintained a policy, custom, or widespread practice of detaining warrantless arrestees for unreasonable periods of time, including routinely in excess of 48 hours, without a judicial determination of probable cause for the detention.

**C.      Typicality.  Fed. R. Civ. P. 23(a)(3)**

92. The named Plaintiffs' claims are typical of the claims of the other Class Members, and the named Plaintiffs have the same interests in this case as all other Class Members. Each Class Member was arrested without a warrant and did not receive a probable cause hearing within a reasonable period of time. Each waited longer than 48 hours without a judicial determination of probable cause. Defendant City of Houston denied each Plaintiff a prompt judicial determination of probable cause. The answer to whether the City of Houston maintains an unlawful policy of detaining warrantless arrestees for an unreasonable period, often for longer than 48 hours, in the absence of a judicial determination of probable cause will determine the claims of the named Plaintiffs and every other Class Member.

93. If the named Plaintiffs succeed in their claims that the City of Houston's policies and practices concerning warrantless arrestees violate their rights, that ruling will likewise benefit every other member of the Class.

**D.      Adequacy.  Fed. R. Civ. P. 23(a)(4)**

94. The named Plaintiffs are adequate representatives of the Class because their interest in the vindication of the legal claims that they raise is entirely aligned with the interests of the other Class Members, each of whom has the same basic constitutional and statutory claims. The named Plaintiffs are members of the Class, and there are no known conflicts of interest among the members of the Class, all of whom have a similar interest in vindicating their constitutional and statutory rights in the face of Defendant's policy.

95. Plaintiffs are represented by attorneys from Civil Rights Corps, the Texas Fair Defense Project, and Kirkland & Ellis LLP, who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendant's scheme and the relevant constitutional and statutory law. Counsel from Civil Rights Corps have been lead

counsel in well over a dozen major federal class actions challenging the constitutionality of post-arrest systems in Alabama, Georgia, Louisiana, Mississippi, Missouri, Texas, and other states.

96.     Class counsel have conducted an investigation into the City of Houston's policy, custom, or practice of detaining arrestees for unreasonable periods of time without a judicial determination of probable cause, and the near constant overcrowding in Harris County Jail.  This investigation has included interviews with witnesses, city officials and employees, inmates, attorneys practicing in courts throughout the region, community members, and national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

97.     Class counsel have a detailed understanding of state law and practices as they relate to federal constitutional requirements.  Counsel have studied the way that these systems function in other cities and counties in order to investigate the wide array of lawful options available to municipalities that seek to comply with the Constitution.

98.     As a result, counsel have devoted significant time and resources to becoming intimately familiar with the City's scheme and with the relevant state and federal laws and procedures that can and should govern it.  The interests of the Class Members will be fairly and adequately protected by the Plaintiffs and their attorneys.

**E.      Rule 23(b)(3)**

99.     Class treatment under Rule 23(b)(3) is appropriate because common questions of law and fact overwhelmingly predominate over individual ones and a class action is the only practicable way—and, therefore, the superior way—of resolving this case.  This case turns, for every Class Member, on what the City's policies, customs, or practices were and whether those policies, customs, or practices were lawful.

100. The common questions of law and fact listed above are dispositive questions in the case of every Class Member. The question of liability can therefore be determined on a class-wide basis. Class-wide treatment of liability is a far superior method of determining the content and legality of the City's policies and practices than individual suits by hundreds or thousands of arrestees.

101. The question of damages will also be driven by class-wide determinations of common questions, such as the policies, practices, and conditions at the Houston Jail. To the extent that individual damages will vary, they will vary depending in large part on the amount of time the individual was unlawfully jailed. Determining damages for individual Class Members can be handled in a ministerial fashion based on easily verifiable records of the length of unlawful incarceration. If need be, damages sub-classes can be formed, and individual damages hearings based on special circumstances can be held, after class-wide liability is determined—a method far more efficient than litigating hundreds or thousands of individual lawsuits on the merits.

## VIII. CLAIMS FOR RELIEF

> ***Count One*: Defendant Violated Plaintiffs' Fourth and Fourteenth Amendment Rights by Failing to Release Them When They Did Not Receive Timely Judicial Determination of Probable Cause**

102. Plaintiffs incorporate by reference the allegations in paragraphs 1–89.

103. The Fourth Amendment requires a prompt judicial determination of probable cause after a warrantless arrest. *McLaughlin*, 500 U.S. at 47; *Gerstein v. Pugh*, 420 U.S. 103 (1975). This constitutional provision is presumptively violated after 48 hours absent extraordinary circumstances, which are not present here.[12] Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that

---

[12] *See, e.g.*, *Waganfeald v. Gusman*, 674 F.3d 475, 482 (5th Cir. 2012) (finding that the detention of warrantless arrestees in New Orleans during Hurricane Katrina fell within the emergency exception to *McLaughlin*'s 48-hour rule).

Defendant violated Plaintiffs' Fourth and Fourteenth Amendment rights by failing to release them after it failed to ensure a prompt judicial determination of probable cause.

104.    Defendant's policy, custom, or practice of continuing to detain individuals arrested without a warrant even after they have not received a prompt probable cause hearing, rather than releasing them, is the moving force of the *McLaughlin* violations occurring in the City of Houston Jail.

105.    This practice of the City is persistent and widespread, and is so common and well settled as to constitute a custom that fairly represents municipal policy.

106.    Defendant and its chief policymakers, including the Mayor and Chief of Police at all relevant times, had actual or constructive knowledge of this policy, custom, or practice long enough to recognize and correct it.

107.    By doing nothing to correct an ongoing pattern of constitutional deprivations of which it is well aware and has been aware for years, Defendant and its policymakers, including the Mayor and Chief of Police at all relevant times, adopted and executed this policy, custom, or practice on behalf of the City.

108.    This policy, custom, or practice continues with the express or implied authority of Houston's Mayor and Chief of Police.

109.    In allowing this widespread policy, custom, or practice to persist, Defendant has demonstrated deliberate indifference to the ongoing and numerous constitutional violations that have affected thousands of individuals in the class period alone.

> ***Count Two*: Defendant Violated Plaintiffs' Rights Under Texas State Law by Refusing to Release Them When They Did Not Receive Timely Judicial Determination of Probable Cause**

110.    Plaintiffs incorporate by reference the allegations in paragraphs 1–97.

111.     Texas state law requires that, where an individual is arrested without a warrant, "the person making the arrest or the person having custody of the person arrested shall without unnecessary delay, but not later than 48 hours after the person is arrested, take the person arrested or have him taken before some magistrate of the county where the accused was arrested *or*, to provide more expeditiously to the person arrested . . . before a magistrate in *any other county* of this state." Tex. Code Crim. Proc. §§ 14.06(a), 15.17(a). In the event that a prompt probable cause hearing has not been provided, Texas state law mandates that "a person who is arrested without a warrant and who is detained in jail must be released . . . not later than the 48th hour after the person's arrest if the person was arrested for a felony and a magistrate has not determined whether probable cause exists to believe that the person committed the offense." Tex. Code Crim. Proc. § 17.033(b).

112.     With respect to persons arrested for misdemeanors in counties that have over 3 million residents (Harris County has approximately 4.1 million residents), Texas state law requires that warrantless arrestees "must be released . . . not later than the 36th hour after the person's arrest" if a magistrate "has not determined whether probable cause exists." Tex. Code Crim. Proc. § 17.033(a-1).

113.     The City of Houston unlawfully detained Plaintiffs under Texas State law when it failed to release them as required by Articles 14.06(a), 15.17(a), and 17.033(a-1) and (b) of the Texas Code of Criminal Procedure.

## IX.    REQUESTS FOR RELIEF

WHEREFORE, the named Plaintiffs, on behalf of themselves and a class of others similarly situated, request that this Court issue the following relief:

a.  A judgment compensating named Plaintiffs and the Class Members for the damages they suffered as a result of Defendant's unconstitutional and unlawful conduct, in an amount to be determined at trial;

b.  An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964, and any other relief this Court deems just and proper; and

c.  Such other relief as this Court deems equitable, just, and proper.

Dated:  December 10, 2018

Respectfully submitted,

*/s/ Patrick King*
Patrick King (TX Bar No. 24095186)
*Attorney-in-Charge*
Kirkland & Ellis LLP
609 Main Street
Houston, Texas 77002
(713) 836-3632 Telephone
(713) 835-3601 Facsimile
patrick.king@kirkland.com

Amanda Elbogen
(*Admitted pro hac vice*)
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, California 90071
(213) 680-8400 Telephone
(213) 680-8500 Facsimile
amanda.elbogen@kirkland.com

Alex S. Zuckerman
(*Admitted pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800 Telephone
(212) 446-4900 Facsimile
alex.zuckerman@kirkland.com

*/s/ Charles Gerstein*
Charles Gerstein
(*Admitted pro hac vice*)
Alec Karakatsanis
Civil Rights Corps
910 17th Street NW, Fifth Floor
Washington, DC 20001
(202) 681-2409
charlie@civilrightscorp.org
alec@civilrightscorps.org

*Attorneys for Plaintiffs*