IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JUAN HERNANDEZ, DEQUAN KIRKWOOD, MANUEL TREVINO, KENT WHEATFALL, and ERIC AGUIRRE, on behalf of themselves and all others similarly situated,** | **Case No. 16-CV-3577** <br><br> **(Class Action)** |
| **Plaintiffs,** | |
| **v.** | |
| **THE CITY OF HOUSTON, TEXAS,** | |
| **Defendant.** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF KAREN ALBERT UNDER FEDERAL RULE 702**

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INTRODUCTION ....................................................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................ 3

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT .............................. 3

BACKGROUND ........................................................................................................ 3

ARGUMENT .............................................................................................................. 5

I. Legal Standard. .............................................................................................. 5

II. Albert's opinion is irrelevant to the Claims and Defenses in this Case. ............................ 5

III. Albert's opinion is not reliable. ..................................................................... 8

    A. Albert did not establish a connection between her experience and the conclusions in her Report ........................................................................ 8

    B. Albert's opinions constitute unreliable speculation. ............................... 10

    C. Albert's opinions are not the product of independent analysis. ............................ 12

CONCLUSION............................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Creighton,*
483 U.S. 635 (1987) ..................................................................................................6

*Brown v. Sudduth,*
675 F.3d 472 (5th Cir. 2012) ...................................................................................5

*Crowley v. Chait,*
322 F. Supp. 2d 530 (D.N.J. 2004) ........................................................................15

*Cty. of Riverside v. McLaughlin,*
500 U.S. 44 (1991)..............................................................................................2, 5, 6

*Curtis v. M&S Petroleum, Inc.,*
174 F.3d 661 (5th Cir. 1999) .................................................................................10

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993)........................................................................................5, 6, 10

*Diggs v. Citigroup, Inc.,*
551 F. App'x 762 (5th Cir. 2014) ............................................................................3

*Gen. Elec. Co. v. Joiner,*
522 U.S. 136 (1997)................................................................................................10

*Graham v. Dall. Area Rapid Transit,*
288 F. Supp. 3d 711 (N.D. Tex. 2017) ....................................................................8

*Hampton Co. Nat'l Sur., LLC v. Tunica Cty., Miss.,*
543 F.3d 221 (5th Cir. 2008) ...................................................................................1

*Hathaway v. Bazany,*
507 F.3d 312 (5th Cir. 2007) .............................................................................11, 12

*In re C.R. Bard, Inc.,*
948 F. Supp. 2d 589 (S.D.W. Va. 2013)................................................................14

*Interplan Architects, Inc. v. C.L. Thomas, Inc.,*
No. 4:08-CV-03181, 2010 WL 4065465 (S.D. Tex. Oct. 9, 2010) ..........................8

*Kia v. Imagine Scis. Int'l, Inc.,*
No. 08-5611, 2010 WL 3431745 (E.D. Pa. Aug. 30, 2010) ..................................15

*Knight v. Kirby Inland Marine Inc.*,
    482 F.3d 347 (5th Cir. 2007) ........................................................................7

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................5

*Marlin v. Moody Nat'l Bank, N.A.*,
    248 F. App'x 534 (5th Cir. 2007) ...............................................................7

*MGM Well Servs., Inc. v. Mega Lift Sys., LLC*,
    No. H-05-1634, 2007 WL 150606 (S.D. Tex. Jan. 16, 2007)...................15

*Modica v. Maple Meadows Homeowners Ass'n*,
    No. 13-0036, 2014 WL 1663150 (E.D. Pa. Apr. 2, 2014).......................14

*New Century Fin. v. New Century Fin. Corp.*,
    No. C-04-437, 2005 WL 5976552 (S.D. Tex. Nov. 29, 2005) ................12

*Nunn v. State Farm Mut. Auto. Ins. Co.*,
    No. 3:08-CV-1486-D, 2010 WL 2540754 (N.D. Tex. June 22, 2010).......5

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    986 F. Supp. 2d 776 (N.D. Tex. 2013) ...............................................12, 14

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009) .....................................................................12

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)......................................................................................1

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) ......................................................................1

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ..................................................................5, 8

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
    No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ..............14

*Salas v. Carpenter*,
    980 F.2d 299 (5th Cir. 1992) ......................................................................7

*Sanders v. City of Houston*,
    543 F. Supp. 694 (S.D. Tex. 1982) ...........................................................10

*SAS Inst., Inc. v. World Programming Ltd.*,
    125 F. Supp. 3d 579 (E.D.N.C. 2015)........................................................14

*SEC v. Lipson*,
    46 F. Supp. 2d 758 (N.D. Ill. 1998) ........................................................................15

*Smith v. Goodyear Tire & Rubber Co.*,
    495 F.3d 224 (5th Cir. 2007) ..................................................................................5

*United States v. Brownlee*,
    744 F.3d 479 (7th Cir. 2014) ................................................................................14

*United States v. Toussaint*,
    838 F.3d 503 (5th Cir. 2016) ..................................................................................7

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ................................................................................11

*Washington v. Armstrong World Indus., Inc.*,
    839 F.2d 1121 (5th Cir. 1988) ..............................................................................11

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ..................................................................................9

*Weiser-Brown Operating Co. v. St. Paul Surplus lines Ins. Co.*,
    801 F.3d 512 (5th Cir. 2015) ................................................................................10

**Statutes**

Tex. C.C.P. Art. 17.033(a) .............................................................................................2

**Rules**

Federal Rules of Evidence 702 ...........................................................................2, 5, 14

## INTRODUCTION

Seeking to distract from the ample record demonstrating that the City routinely violated warrantless arrestees' constitutional rights by jailing them without administering prompt probable cause determinations, the City has offered irrelevant opinions from an unqualified expert, Karen Albert.  The Albert Report (attached hereto as Ex. 1; hereinafter, the "Report") is inadmissible for two reasons.

First, Albert's opinion that City jail personnel made "reasonable" efforts to process inmates promptly is irrelevant to the claims and defenses in this case.  In a case alleging municipality liability, Plaintiffs must show that there was "(1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom." *Hampton Co. Nat'l Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 227 (5th Cir. 2008) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567,  578  (5th Cir. 2001)).[1]   The question is whether the policy was unconstitutional, not whether the individuals carrying out the policy did so reasonably.  *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality.").

Albert ignores the claims in this case, applying the legal standard for individual officer liability (instead of municipal liability) to low-level employees (instead of policymakers) to justify a defense of exigent circumstances (instead of extraordinary circumstances).  Her contention that it was "not realistic" to release arrestees after 48 hours of detention is beside the point; the Supreme Court's 48-hour rule is not discretionary.  *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 57

---

[1]    On August 30, 2018, this Court ordered an adverse inference against the City that, "It is established that (a) throughout the class period, the City of Houston had a policy of not releasing warrantless arrestees who had not received neutral determinations of probable cause within the constitutionally required period of time; (b) throughout the class period, the City's policymakers were aware of this policy; and (c) the City's policymakers acted with deliberate indifference to the unconstitutional policy and the constitutional violations that resulted." (ECF No. 80 at 12.)

(1991) (requiring release after 48 hours absent a neutral determination of probable cause).  Neither is the 24-hour rule under Texas state law.  *See* Tex. C.C.P. Art. 17.033(a) (misdemeanor arrestees "***must*** be released . . . not later than the 24th hour after the person's arrest") (emphasis added). Therefore, Albert's blanket determinations regarding the reasonableness of City Jail operations are not helpful to a factfinder.

Further, Albert utterly failed to establish the reliability of her opinions in either her Report or her deposition testimony.  Albert's professional background does not provide her with adequate expertise to reliably opine on even the irrelevant issues she considered, let alone questions relevant to the outcome of this case.  She is a former Virginia corrections officer, who has no familiarity with the Texas Code of Criminal Procedure, and who never worked in a jurisdiction that conducted pre-hearing arrestee transfers.  She also failed to acquaint herself with the pertinent records or laws before offering her opinions, ignoring both individual arrest records and policymaker depositions to prepare her Report.  She was unaware that the class period was still open, and reviewed just a handful of documents covering just 18 months of the nearly five-year period at issue in this case. Handpicked by her former employer to act as a mouthpiece for the City's meritless defenses, Albert failed to conduct any independent investigation into the facts, and reverted to rank speculation when pressed on why the City did what it did.  Accordingly, this Court should exclude Albert's report under Federal Rule of Evidence 702.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This action arises because the City of Houston detained thousands of individuals beyond the constitutionally permissible time without ensuring that they received prompt probable cause hearings.  Over the course of discovery, Plaintiffs took 11 depositions of the City's witnesses, the last of which was Albert.  Concurrent with the Motion to Exclude her testimony, Plaintiffs are also moving for summary judgment on liability as to Class A.

## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

1. **Should this Court exclude Karen Albert's expert Report and testimony because she draws on the wrong legal standard by opining on the "reasonableness" of City Jail personnel's actions, and thus her opinions are irrelevant to the municipality liability issues in this case?**

2. **Should this Court exclude Karen Albert's expert Report and testimony because they are unreliable due to her lack of pertinent experience and failure to acquaint herself with the facts relevant to the lawfulness of the City's detention policies?**

The Fifth Circuit Court of Appeals reviews a district court's decision to exclude expert testimony for abuse of discretion.  *See, e.g.*, *Diggs v. Citigroup, Inc.*, 551 F. App'x 762, 764 (5th Cir. 2014).

## BACKGROUND

As part of its defense, the City offers the expert Report and testimony of Karen Albert, a purported expert in corrections operations.  Albert was retained "to provide an operational perspective . . . and address whether the actions taken by the City, including HPD, were reasonable."  (Ex. 2, Albert Tr. at 33:22-25.)  Albert's company, Practical Solutions for Public Safety, provides operational consulting services to municipalities nationwide with respect to their jails and prisons.  (*See* Ex. 3, Pl.'s Ex. 114.)  Her focus is on effectiveness and efficiency in jail operations; she is not a lawyer and has no formal legal training.  (Ex. 2 at 43:13-16.)   Her only experience working in corrections came in the state of Virginia; she has never worked in law enforcement in the state of Texas.  (*Id.* at 42:21-43:2.)

3

In her career as a corrections consultant, Albert provided services to the City and Harris County on three separate occasions:  (i) in 1999, when the City was considering replacing the Central Jail in response to a consent decree "based on the crowding" (*Id.* at 14:9-18); (ii) in the early 2000s, when the City and Harris County first discussed a joint facility (*id.* at 21:21-22:4); and (iii) in 2013, when she conducted another assessment as part of the project that would culminate in the current Joint Processing Center (*id.* at 22:5-18).   During the course of that final project, approximately one year before the Class Period began, Albert "observed crowding as [she] toured the facilities" and noted that "the facility layout did not support the most efficient processing option."  (*Id.* at 25:1-21.)[2]

Albert's testimony and expert Report relate to whether the City and its jail staff's actions were reasonable.  Her Report concludes that the City made "reasonable and repeated efforts to ensure prompt probable cause determinations," because "[i]t was the City jail staff's perception that inmates charged by Harris County could not be released," (Report at 5).   Neither of these conclusions are relevant to the issues in this case:  that the City's policies resulted in pre-hearing detention in excess of the constitutionally permissible period, and that such detentions were not the result of "extraordinary circumstances."  Ultimately, Albert opines that "[r]equired release of an arrestee who had been held longer than 48 hours is not realistic."  (*Id.* at 8.)

---

[2]    Albert's contact at the City all three times was Patrick Dougherty, another witness in this case.  (*Id.* at 13:12-21.) When she was first approached to serve as the City's expert, Albert contacted Dougherty "to make sure this would not create a conflict for him if I were involved" and "debat[ed] with [her]self whether it was a potential conflict of interest."  (*Id*. at 27:21-28:4.)

## ARGUMENT

### I.   LEGAL STANDARD.

"Rule 702 requires that expert testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)). "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010); *see also Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). This critical "gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999) (internal quotation marks omitted).

### II.   ALBERT'S OPINION IS IRRELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE.

Plaintiffs seek to recover damages from the City of Houston, a municipality that they allege to have had an official policy of holding arrestees beyond limits set by the Texas Code of Criminal Procedure (24 hours) and the U.S. Constitution (48 hours). (*See, e.g.*, ECF No. 86, Named Plaintiffs' Motion for Class Certification). Pre-hearing detentions must occur "as soon as is reasonably feasible, but in no event later than 48 hours after arrest." *McLaughlin*, 500 U.S. at 57. To justify holding an arrestee past that time, the municipality bears the burden "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.*

Applying these principles, it is irrelevant whether the length of detentions beyond 24 or 48 hours "was reasonable." (Ex. 2, at 33:22-25.) In fact, any such detentions were presumptively *unreasonable*, irrespective of Albert's testimony. *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). The City's liability for detentions beyond the legal limits does not depend on the

reasonableness of its process, or of the "City jail staff's perception" (Report at 5), but whether there was an extraordinary circumstance justifying the unlawful detention.  *See McLaughlin*, 500 U.S. at 57.  Because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful," *Daubert*, 509 U.S. at 591, Albert's commentary that "the processes in place and the actions taken . . . were . . . reasonable" (*see, e.g.*, Ex. 2 at 111:3-6) is irrelevant.[3]

At bottom, Albert's testimony does not address the claims and defenses in this case.   The City retained Albert "to provide an operational perspective to what was going on and address whether the actions taken by the City, including HPD, were reasonable." *Id*. at 33:20-25.  Albert's determination of whether the City and its jail staffs' actions were "reasonable" has no bearing on whether the City's detentions exceeded the constitutionally permissible period, or whether those detentions were justified by extraordinary circumstances.  (*See, e.g.*, *Id*. at 146:13-21 ("Based on the testimony that was provided, they were exploring reasonable options.  You know, again, they were not being cavalier about this process."); *id*. at 142:23-143:2 ("[T]here was no indication . . . that the City was disregarding any of the issue and they were trying to resolve them in any — any reasonable manner that they could."); *id*. at 163:13-15 ("I based my opinion on the progress that the agency made . . . .").)  While reasonability is relevant in the qualified immunity context,[4] Courts do not ask whether an overlong detention was reasonable when determining municipal liability for

---

[3]   Albert apparently lacks a basis to make even this irrelevant observation regarding "reasonability," given that she did not review the depositions of any of the City policymakers in this case concerning the unconstitutionality of City policy (*id.* at 37:9-21) and did not request to speak to a single individual employed by the City or County (*id.* at 39:4-11).

[4]   *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("The relevant question in this [qualified immunity] case . . . [is] whether a reasonable officer could have believed Anderson's warrantless search to be lawful.").

*McLaughlin* claims:  the question is only whether the overlong detention was justified by an extraordinary circumstance.

Moreover, whether Albert thought the City was not being cavalier about the process does not help the jury understand any issue in this case.  Courts in the Fifth Circuit exclude expert testimony that is irrelevant to the issues in a case.  *See, e.g.*, *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (excluding report and testimony of expert unrelated to "particular injuries" suffered by plaintiffs and therefore "failed to provide a relevant link with the facts at issue").  And, in any event, Albert's Report and testimony are inadmissible to the extent they opine on the state of mind of City jail personnel.  *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) ("[A]n expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible.") (citing *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992)).

Albert also failed to address the City's lone valid defense: extraordinary circumstances. The only affirmative defense Albert addresses—that the "length of time between Plaintiffs' arrest and the provision of a probable cause determination was reasonable" (ECF No. 108, at 17)— should also be struck for its irrelevance:  after 48 hours, reasonableness without extraordinary circumstances is not a defense to a *McLaughlin* claim.  Yet Albert demonstrated a lack of familiarity with the relevant defense—extraordinary circumstances—repeatedly suggesting that "exigent circumstances" might impact or justify individual overlong detentions.  (*See, e.g.*, Ex. 2 at 58:8-59:5 and 106:1-17.)  The exigent circumstances doctrine, unlike the extraordinary circumstances defense established by *McLaughlin*, does turn on the question of reasonableness.  *See, e.g.*, *United States v. Toussaint*, 838 F.3d 503, 509 (5th Cir. 2016) ("[C]ourts must decide whether

the officer who engaged in conduct without a warrant acted reasonably.").  This confusion alone requires the exclusion of Albert's Report and testimony.[5]

## III.   ALBERT'S OPINION IS NOT RELIABLE.

Even if Albert's opinion that detentions in excess of 24 or 48 hours are "reasonable" were relevant, her opinions fail to satisfy the City's burden as to reliability for three independent reasons: *first*, she lacks the requisite experience needed to support her conclusions; *second*, her testimony is unfounded and speculative; and *third*, she failed to conduct an independent investigation into the facts of the case.

### A.   Albert did not establish a connection between her experience and the conclusions in her Report.

Experts who rely solely or primarily on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Graham v. Dall. Area Rapid Transit*, 288 F. Supp. 3d 711, 731 (N.D. Tex. 2017); *see also Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4065465, at *18 (S.D. Tex. Oct. 9, 2010) (granting motion to exclude where expert failed to show "how his background experience has directed his analysis of the present case.")  Although this case concerns the constitutionality of certain detention policies governed in part by Texas law, Albert failed to analyze (or even read) those policies.  (*See, e.g.*, Ex. 2 at 109:19-20 ("I did not do an analysis of the policy and procedure.").)  Furthermore, Albert has never worked in Texas law enforcement and never applied or opined upon Texas law.  (*Id*. at 42:25-43:2.)  Her testimony therefore lacks reliability.

---

[5]   In any event, to offer admissible testimony on either defense Albert would have to review information relating to the actual detentions at issue; as addressed below, she admits that she did not.  (*See* Ex. 2 at 58:8-59:5; 106:6-17.)  As such, her uninformed opinion is insufficient to establish whether or not an extraordinary circumstances actually caused any of the overlong detentions at issue.  *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–45 (5th Cir. 2002) (excluding inconclusive expert testimony regarding causation).

Nor does Albert's work experience as a deputy sheriff in Arlington provide sufficient grounds to qualify her as an expert.  Albert offers only vague descriptions of her past experience with policymaking.  (*See* Report at 2.)  She claims to have worked with "numerous agencies . . . by. . . developing policies, procedures, and training," yet does not provide any further information, such as where and who those agencies are, or what those policies or procedures entailed.  (*Id.*)  Second, she fails to explain how this vague discussion of her qualifications even remotely directs her analysis of this case; in fact, apart from broad statements like "in my experience" and "based on my experience and training," no portion of her findings section references or draws on any specific previous experience with jail policymaking and implementation.  (*See* Report at 7.)  This lack of empirical support for her opinions fails to carry the City's burden for its claim that Albert is a reliable expert.  *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997) (excluding testimony where expert's only support for reliability was vague reference to past experience).

Not only does her Report lack this critical connective tissue, her deposition testimony provides no basis whatsoever for her to opine that the City's policies "reflect the legal standards" to which they must adhere.  (Report at 5.)  In fact, Albert admitted that she never reviewed the state statutes governing pre-hearing detention.  (Ex. 2 at 74:16-75:12.)  She also lacks knowledge and experience regarding the "48-hour" rule relevant to this case, because, as she admits, the Arlington sheriff's department had magistrates on site and operated in a fundamentally different way than the City-County relationship in this case.  (*Id.* 68:12-13 ("I never had a kind of a need to know this 48-hour rule [while working in Arlington]."); 101:6-9 ("[T]hat process of batching [arrestees for transfer] was relatively new to me").)  Furthermore, Albert did not know that City is already subject to a permanent injunction that prevents it from detaining persons arrested for probable cause longer than 24 hours without a probable cause determination, as entered in *Sanders*

*v. City of Houston*, 543 F. Supp. 694 (S.D. Tex. 1982).  (*See* Ex. 2 at 87:7-88:17.)  These gaps in her knowledge and experience are fatal to her attempt to offer expert testimony on the facts in this case:  an expert unfamiliar with relevant state and local law cannot reliably determine whether a party has complied.  *See Weiser-Brown Operating Co. v. St. Paul Surplus lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (excluding opinion that defendant "violated 'the accepted practice'" where expert admitted lack of familiarity with relevant provisions of insurance code) (internal quotation marks omitted).  Because Albert admits her lack of familiarity and experience with the standards that govern the City's conduct in this case, the City fails to carry its burden to show that her testimony is reliable.

### B.      Albert's opinions constitute unreliable speculation.

Albert offers many opinions without any factual or experiential basis.  Yet reliability requires more than mere speculation or subjective belief.  *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)).  A district court need not "admit opinion evidence that is connect[ing] to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  These opinions must also be excluded.

For instance, the Report asserts that "the only reasonable alternative to continued detention" has the "potential to endanger the arrestee . . . by placing the arrestee in a vehicle that provides less security than a detention facility" without any basis for that opinion.[6]  (*See* Report at 6.)  But at her deposition, Albert admitted that these concerns raised in the Report were "not based on anything that [she] reviewed in preparing [her] report." (Ex. 2 at 141:13-15.)  She also claimed

---

[6]     The exhibits presented at Albert's deposition contain several alternatives she failed to consider, including release without charges (*See* Ex. 4, COH0002021) a cite-and-release arrest policy (*See* Ex. 5, Pl.'s Ex. 119, at 8).

that "an additional capital cost to the existing jail to accommodate video magistration *could have* appeared superfluous" (Report at 7) (emphasis added), later admitting that she did not "have any basis [to claim that] anybody in the City actually expressed that view" (Ex. 2 at 145:2-8).  And, despite her bottom-line conclusion that "the City has clearly demonstrated reasonable and repeated efforts to ensure prompt probable cause determinations" (Report at 8), Albert admitted that she did not "specifically ask" whether the City was currently in compliance with the policies it implemented to remedy the issues, only offering that she had "no reason to believe that they weren't." (Ex. 2 at 79:11-17).[7]  Speculation based on negative inferences lacks foundation and is unreliable.  *See Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) ("[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.").

Nor may Albert rely on her personal experience to back up her baseless assumptions.  The Fifth Circuit has expressly held that general police experience cannot transform "personal assurances" into reliable expert testimony.  *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).  There, as here, a law enforcement expert relied on deposition testimony as well as "a number of supposed facts not in the record" to opine on the circumstances of a particular alleged excessive force incident.  *Id.* at 319; *compare* Ex. 2. at 92:17-23 (admitting that she could not opine on individual cases).  There, as here, the proposed expert injected his own understanding of a party's mental state, noting the plaintiff was "doing everything he could" to avoid confrontation with the police.  *Id.* at 319 n.4; *compare* Albert Tr. at 142:23-143:2 ("[T]here was no indication in

---

[7]     *See also* Ex. 2 at 81:8-13 (A. . . . It would be an absolute assumption, but I assume the processing is moving forward as it was programmed. Q. When you say absolute assumption, you mean you're speculating? A. Right. Right."); *id.* 85:15-86-5 (admitting that she may have "made an inappropriate assumption" regarding the City's present detention policies, having not reviewed any documents from 2017 or later).

what I found that the City was disregarding any of the issues and they were trying to resolve them in any – reasonable manner that they could.").  As the Fifth Circuit held in *Hathaway*, this Court should exclude Albert's opinion for what it is: "a host of unsupported conjectures that falls far short of a methodology." *Hathaway*, 507 F.3d at 318.

### C.   Albert's opinions are not the product of independent analysis.

Albert's reliance on speculation is understandable given her failure to analyze information beyond that which confirms the City's preferred narrative.  That willful blindness compounds the problems posed by her lack of qualifications and provides yet another reason to exclude her opinions.  *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("[A]n expert cannot forego [their] own independent analysis and rely exclusively on what an interested party tells [them]."); *New Century Fin. v. New Century Fin. Corp.*, No. C-04-437, 2005 WL 5976552, at *3 (S.D. Tex. Nov. 29, 2005) (excluding expert's opinions "based primarily on facts supplied to him by . . . [attorneys]").  A circumscribed set of information that Albert never sought to supplement or contextualize cannot form the basis of reliable expert opinions.  *See Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("Where an expert's opinion is based on insufficient information, the analysis is unreliable.").[8]

Albert's only independent research beyond the initial package she received from the City's counsel consisted of two news articles on the overcrowding issue.  (*See* Report at 1-2; Ex. 2 at 54:24-55:11.)[9]  This approach revealed myriad shortcomings during her deposition:

---

[8]   Albert received and relied upon 29 total documents, 22 of which the City produced previously in this litigation.  That is less than one tenth of one percent of the documents the parties have produced in this case.

[9]   Despite reviewing the Second Amended Complaint ("SAC"), Albert did not review any of the articles referenced in that pleading.  (Ex. 2 at 54:24-11; *see* ECF No. 89, SAC ¶ 25 n.3-4.)  That admissions also reveals that, while reviewing the deposition transcripts she did rely upon, Albert failed to review the accompanying exhibits:  for example, Plaintiffs questioned Colin Weatherly about the September 8, 2016 article from the Houston Press titled

- Albert opined on the reasonableness of the City's conduct for the "two years prior to the filing of the Original Complaint on December 6, 2016" despite not reviewing a single document created between that date and August 25, 2015.  (*Compare* Report at 3, *with* Ex. 2 at 80:6-81:2.)

- Albert was unaware that the purported class period in this case remains open, and did not request any information from the past two years to confirm whether the City had in fact resolved the delay issues.  (*Id.* at 85:17-86:5 ("[P]erhaps ***I made an inappropriate assumption***, but I have believed  . . . that the practices that were put in place were indeed reasonable and that if there was an additional [sic] information that should help form my opinion, [that] information would have been provided.") (emphasis added).)

- Albert did not review, or even receive, the County's public booking records, including the records of the Named Plaintiffs.  (*Id.* at 92:21-23.)

- Albert did not receive, or inquire about, any documents or information related to any purported extraordinary circumstances that might have contributed to overlong detentions.  (*Id.* at 105:13-106:17.)

- Albert did not review, or even receive, all relevant Texas criminal law procedures or Harris County Criminal Court rules.  (*Id.* at 110:10-11.)

- Albert could not confirm whether her Report covered all the options that the City considered to alleviate the delay issues.  (*Id.* at 118:11-14 ("I do not know if it's an exhaustive list.").)  In reference to overcrowding, when asked if she inquired whether there were any other solutions considered besides those listed in the documents given to her, Albert replied "I did not ask that question." (Id. at 118:8-10.)[10]

- Albert could not say when the crowding at the Harris County jail became an issue for the City's processing.  (*Id.* at 126:12-128:14 ("[T]here's a lot I don't know about.").)

- Albert could not say how many individuals were detained beyond the 48-hour limit, or for how long.  (*Id.* at 174:23-25 ("I am not addressing the numbers at all because I just don't have enough information.").)

---

"The Harris County Jail Got So Crowded the Sheriff Delayed Inmate Transfers" referenced in the complaint. (*See* Ex. 6, Weatherly Dep. at 149:18-150:13; Ex. 7, Pl.'s Ex. 42.)

[10]   Again, the Second Amended Complaint offered Albert guidance, referencing a report from Mayor Sylvester Turner, which contained an alternative not discussed in the Report that would have potentially alleviated the delay issues—cite and release arrest practices.  (*See* ECF No. 89, SAC ¶ 29 n.7; Ex. 5, Pl.'s Ex. 119; Ex. 2. at 115:23-116:2 ("I don't think I reviewed anything that would indicate one way or the other [whether the City responded to the Mayor's suggestion to use cite-and-release].").)

Despite admitting that she did not "know all of the factors that were at play at the time" (Ex. 2 at 174:23-175:4), Albert never asked for additional information to help her understand the broader context of the issues that plagued the City's jail operations (*see id.* at 86:2-5).

To make matters worse, Albert filled these gaps by accepting as true numerous assertions forwarded in the depositions of the City's other witnesses.  (*See, e.g.*, *id.* at 89:25-90:9 (statement that "jail staff were not permitted discretionary decision-making authority" based on "the e-mails that were received, based off of depositions"); *id.* at 99:19-100:15 (defining consequences of 48-hour detention "[b]ased on what I have reviewed in depositions").)  But "simply parrot[ing] deposition evidence" is not a reliable methodology.  *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *10 (E.D. Tex. Apr. 10, 2017).  *Robroy* is instructive:  there, the district court excluded expert testimony on damages and causation that only found support "by a reference to a deposition," reasoning that such testimony,

> "would not be amenable to meaningful cross-examination, because [the expert's] opinions on that topic are not the product of [their] expertise, but instead simply constitute [their] assessment of the particular parts of the record on which [they] ha[d] chosen to rely."

*Id.*  So too here:  bereft of expertise or investigation, Albert's opinions simply recycle other parts of the record to arrive at an unhelpful and irrelevant conclusion.  (*See* Point II, *supra*.)[11]  Albert

---

[11]  *See also United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) ("The entirety of [an expert's] testimony cannot be the mere repetition of the 'out-of-court statements of others', and … 'an expert witness may not simply summarize the out-of-court statements of others as his testimony'. … An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy."); *SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 587 (E.D.N.C. 2015) ("Rule 702 does not grant an expert an unlimited license to testify in a manner that simply summarizes otherwise admissible evidence without some connection to the expert's proffered expertise . . . . When an expert summarizes evidence for the jury, the cornerstone of admissibility is the expert's reliance on his or her expertise in conveying that summary."); *Modica v. Maple Meadows Homeowners Ass'n*, No. 13-0036, 2014 WL 1663150, at *1 (E.D. Pa. Apr. 2, 2014) (excluding expert testimony that "merely summarizes deposition testimony"); *Orthoflex Inc. v. Thermotek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. tex. 2013) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him."); *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 608 (S.D.W. Va. 2013) ("Expert testimony which 'merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness' is properly excluded."); *Kia v. Imagine Scis. Int'l, Inc.*, No. 08-5611, 2010 WL 3431745, at *5

may not evade "critical, independent analysis" and peer through a keyhole at the City's most helpful facts when presented as an expert witness.  *See, e.g.*, *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, No. H-05-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (engineering opinion that failed to review or rely upon available testing data lacked reliability).  Her opinions must be excluded.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court exclude the Report of Karen Albert from the evidentiary record because it is irrelevant and unreliable.

---

(E.D. Pa. Aug. 30, 2010) ("[A] party may not 'filter fact evidence and testimony through his expert merely to lend credence to the same' nor may expert testimony be used merely to repeat or summarize what the jury independently has the ability to understand."); *Crowley v. Chait*, 322 F. Supp. 2d 530, 553 (D.N.J. 2004) ("[N]either [the expert] nor any other witness will be permitted to simply summarize the facts and the depositions of others."); *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

Dated: June 28, 2019                       Respectfully submitted,

By: */s/ Patrick King*
Patrick King (TX Bar No. 24095186)
*Attorney-in-Charge*
Kirkland & Ellis LLP
609 S Main Street
Houston, TX 77002
(713) 836-3600 Telephone
(713) 836-3601 Facsimile
patrick.king@kirkland.com

Amanda Elbogen (*Admitted pro hac vice*)
Leonora Cohen (*Admitted pro hac vice*)
Kirkland and Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400 Telephone
(213) 680-8500 Facsimile
amanda.elbogen@kirkland.com
lena.cohen@kirkland.com

Alex Zuckerman (*Admitted pro hac vice*)
Stephanie M. Shimada (*Admitted pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Ave
New York, NY 10022
(212) 446-4800 Telephone
(212) 446-4900 Facsimile
alexander.zuckerman@kirkland.com
stephanie.shimada@kirkland.com

*/s/ Charles Gerstein*
Charles Gerstein (*Admitted pro hac vice*)
Ryan C. Downer (*Admitted pro hac vice*)
Civil Rights Corps
910 17th Street NW, Fifth Floor
Washington, DC 20006
(202) 681-2409 Telephone
charlie@civilrightscorps.org
ryan@civilrightscorps.org

*Attorneys for Plaintiffs*

16

## **CERTIFICATE OF CONFERENCE**

I hereby aver that Plaintiffs have made all the attempts to meet and confer regarding this motion, as described in detail herein, in good faith, and have not reached agreement as to the disposition of the motion.

*/s/ Alex Stone Zuckerman*
Alex Stone Zuckerman

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 28, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

*/s/ Patrick King*
Patrick King