IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN HERNANDEZ, DEQUAN KIRKWOOD, MANUEL TREVINO, KENT WHEATFALL, and ERIC AGUIRRE on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>THE CITY OF HOUSTON, TEXAS,<br><br>    *Defendant*. | CIVIL ACTION NO. 4:16-CV-3577 |

**Memorandum in Support of Joint Motion for
Final Approval of Class Action Settlement**

  Plaintiffs Juan Hernandez, DeQuan Kirkwood, Manuel Trevino, Kent Wheatfall, and Eric Aguirre, on behalf of themselves and the certified classes of similarly situated people whom they represent, jointly with Defendant the City of Houston, Texas (the "City") (collectively "the Parties"), submit this Memorandum of Law in support of their Joint Motion for Final Approval of Class Action Settlement.

  The Parties filed a joint motion for preliminary approval of the Settlement Agreement, requesting that the Court grant the motion for preliminary approval, approve the content and method of distribution of the agreed-upon notice to the Classes, and set a schedule for the final approval hearing. (Doc. 185.) On October 22, 2020, this Court granted the Motion. (Doc. 186.) Notice was provided to the Classes in accordance with this Court's order, and no objections to the settlement terms have been submitted.

  The Parties now seek final approval of the settlement. Each of the relevant factors that the Court may consider in determining the fairness of the settlement weighs in favor of approval here.

The Settlement Agreement (Doc. 185-2)[1] represents a full and fair resolution of Plaintiffs' claims, and provides far-reaching relief to the Class Members more quickly than could likely have been obtained through litigation.

## I. BACKGROUND

Plaintiffs filed this case pursuant to 42 U.S.C. § 1983 and this Court's supplemental jurisdiction, on December 5, 2016, alleging that during the class period the City violated the Fourth and Fourteenth Amendments to the U.S. Constitution and Articles 14.06(a), 15.17(a), and 17.033 of the Texas Code of Criminal Procedure. (Complaint, Doc. 1.) Discovery began in 2017. (Doc. 31). Fact discovery in this case proceeded for more than two years and was extensive. In early 2018, the Parties litigated complex discovery disputes, including several motions to compel, motions for discovery sanctions, and ultimately a proceeding for a writ of mandamus in the Fifth Circuit regarding a privilege dispute. The Parties concurrently engaged in fact and expert discovery, including document production and depositions. In particular, Plaintiffs deposed 10 City officials as fact witnesses, the City's Rule 30(b)(6) witness (twice), and the City's retained expert. The City deposed all five Named Plaintiffs.

On July 3, 2019, the Court granted Plaintiffs' motion to certify this case as a class action. (Doc. 154.) The Court certified two Classes: Class A consisted of all people arrested without a warrant after December 5, 2014, and detained by the City for more than 48 hours without a judicial determination of probable cause, and Class B consisted of all people arrested without a warrant after December 5, 2014, and detained by the City for more than 24 hours and less than 48 hours

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Settlement Agreement.

without a judicial determination of probable cause. The City sought interlocutory review of the class-certification decision in the Fifth Circuit, which was denied on August 8, 2019.

On July 29, 2019, while the Parties' fully briefed cross-motions for summary judgment were pending before the Court, the Parties conducted a day-long mediation with Magistrate Judge Dena Palermo. Shortly after that mediation, the Parties reached a settlement in principle pursuant to which Plaintiffs would receive $1,175,000 in exchange for dismissing the Plaintiffs' claims with prejudice, and the City did not and does not admit liability for the conduct alleged in the Complaint. The Parties then engaged in nearly a year of hard-fought, arm's-length negotiations to reach agreement on the particular terms of the full Settlement Agreement. On July 8, 2020, the Houston City Council voted to approve and fund the Settlement, and it was signed by the Mayor the following day, and then fully executed by both Parties.

## II.    SUMMARY OF THE SETTLEMENT

The terms of the proposed Settlement are straightforward: in exchange for a settlement fund of $1,175,000, the Named Plaintiffs and Settlement Class Members agree to forever release, acquit, relinquish, and discharge any claims they may have relating to or arising out of the factual or legal allegations alleged in the Action.

The Settlement Fund will be distributed as follows: First, it will be used to pay reasonable costs associated with providing notice to the Class Members and an incentive award of $10,000 to each Named Plaintiff to compensate them for their service as representatives of the class, as requested herein. Next, the Settlement Fund will be subject to claims from the Class Members pursuant to an allocation formula described below. Because this formula values each Class Member's claim by reference to the total amount remaining in the Settlement Fund after notice costs and incentive awards, it is very likely that the vast majority of the money in the Settlement Fund will be distributed to Class Members. If nonetheless after these claims are submitted, more

than $200,001 remains in the Settlement Fund, the Settlement Administrator will redistribute funds to the Class Members pursuant to the allocation formula. Once unclaimed funds total $200,000 or less, those funds—and only those funds—will be subject to a petition for attorneys' fees and costs for Class Counsel, a small fraction of the actual or lodestar value of Class Counsel's fees and the actual value of their costs. Accordingly, because a significant amount of unclaimed funds is very unlikely to remain, Class Counsel is very unlikely to petition the Court for more than a minimal award of attorneys' fees and costs. In any event, as agreed in the Settlement Agreement, all payments to Class Members, settlement administration and notice costs, attorneys' fees and costs, and Named Plaintiff incentive awards shall not, under any circumstances, exceed $1,175,000.00.

Plaintiffs have determined that the Settlement Fund will be distributed to Class Members as described in Exhibit A to the Settlement Agreement:

- Class A members' claims are valued on a per-hour basis pursuant to this paragraph. Class A members are subdivided into two groups for purposes of distribution: Group 1 consists of all people who declare on their claim form that they believe probable cause was not found in their case and for whom that declaration is verified by the Settlement Administrator. Group 2 will consist of all other Class A members (including those who do not return a claim form).
    - The per-hour value of each Group 1 claim shall be calculated by dividing 10% of the amount remaining in the Settlement Fund after notice costs and incentive awards by the total number of hours of detention beyond 48 hours. Each Group 1 member's claim will be valued at the Group 1 per-hour value multiplied by the number of hours that member was detained beyond 48 hours.

- o The per-hour value of each Group 2 claim shall be calculated by dividing 65% of the amount remaining in the Settlement Fund after notice costs and incentive awards by the total number of hours of detention beyond 48 hours. Each Group 2 member's claim will be valued at the Group 2 per-hour value multiplied by the number of hours that member was detained beyond 48 hours.

- Class B members' claims are valued on a per-person basis pursuant to this paragraph. Each member of Class B will receive an amount calculated by dividing 25% of the amount remaining in the Settlement Fund after notice costs and incentive awards by the total number of members of Class B who submit claim forms.

### III.  LEGAL STANDARD FOR APPROVING A CLASS SETTLEMENT

Having preliminarily approved the settlement, this Court now proceeds to the final approval determination. In determining the propriety of granting final approval of a class action settlement, courts determine whether the settlement is "fundamentally fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (standard for approving a proposed class action settlement is whether the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties."). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981) (discussing "the strong judicial policy favoring settlement of disputes" in class-action settlement appeal).[2]

---

[2] *See also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *Little Rock School Dist. v. Pulaski Cnty. Special School Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them . . . . As a practical matter, a remedy that

Settlement agreements conserve judicial time and limit expensive litigation. 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:41, at 87 (4th Ed. 2002) (hereafter "*Newberg on Class Actions*") ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). When a settlement, such as this one, is reached as the result of arm's-length negotiations between competent counsel on both sides, it "is entitled to a presumption of validity, which ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *U.S. v. Tex. Educ. Agency,* 679 F.2d 1104, 1108 (5th Cir. 1982).

Courts in the Fifth Circuit "often combine" the *Reed* factors and the Rule 23(e)(2) factors "in analyzing class settlements." *O'Donnell v. Harris Cnty., Texas*, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (collecting cases) (combining the analysis of the *Reed* factors and Rule 23(e)(2) factors).

> In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Id*. (quoting *All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011)). These factors overlap with the factors set forth in Rule 23(e)(2) for determining that settlement terms are fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

---

everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming.").

6

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## IV. FINAL APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE.

All of the *Reed* and Rule 23(e)(2) factors favor approval of the settlement in this case.

<u>*Named Plaintiffs and Counsel Are Adequate Representatives*</u>: As the Court found in certifying the classes, both Class Counsel and Named Plaintiffs are adequate representatives of the Class. *See* Doc. 154 at 9. Additionally, as in *O'Donnell*, "[a]mple record evidence shows that the class has been ably and diligently represented, in a case filled with legal and factual complexities." *O'Donnell*, 2019 WL 4224040, at *9; *Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (representation was adequate where settlement was "negotiated by experienced, informed counsel . . . with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues"). This factor thus weighs heavily in favor of final approval of the settlement agreement.

<u>*First, Second, and Third* Reed *Factors*</u>: "The Court may presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Id*. Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 *Newberg on Class Actions* § 11:41, at 90; *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). Here, the Parties negotiated the proposed Settlement

7

Agreement at arm's length over the course of nearly a year, after three years of extensive, vigorous litigation and while summary judgment motions were pending, and in the presence of a neutral mediator. There was no collusion between the Parties, the proceedings have been lengthy and complex, and the Parties have completed discovery and briefed summary judgment motions, leaving only trial remaining. It is thus clear that both the Parties and the Court have ample information to evaluate the merits of their competing positions. *O'Donnell*, 2019 WL 4224040, at *10; *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). Additionally, by reaching settlement at this stage, Plaintiffs avoided expenses and delay, and ensured recovery for the Class. *Hays*, 2019 WL 427331, at *10. These factors therefore all weigh heavily in favor of final approval of the Settlement Agreement.

*Fourth, Fifth, and Sixth* Reed *Factors*: "Litigation is inherently risky and full of impediments, even where . . . the plaintiffs ha[ve] a strong chance of proving liability." *Id*. As in *Hays*, Class Counsel here "are experienced, realistic, and understand that the resolution of liability, issues, the outcome of the trial, and the likely appeals process, are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties." *Id*. Under the Settlement Agreement's terms, Class Members are likely to collect well in excess of one million dollars in recovery from the Settlement Fund. This recovery is within the range of plausible outcomes at trial, and has increased value given that Class Members will be able to collect far sooner than if litigation continued. Additionally, Class Counsel and Named Plaintiffs strongly believe this settlement is fair and beneficial to all parties involved. Thus, the Settlement the fourth, fifth, and sixth *Reed* factors favor approval of the settlement.

*Distribution Method and Incentive Awards*: The Court preliminarily approved the distribution method and incentive awards in its Preliminary Approval Order. Assessment of a

distribution plan for settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to approval of the settlement as a whole—the plan must be "fair, adequate and reasonable." *In re Chicken Antitrust Litig.*, 669 F.2d 228, 238 (5th Cir. 1982). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Here, and as detailed above, the distribution method is objective and tailored to provide the most relief to the Class Members who were detained for the most time by the City, while ensuring that all Class Members receive meaningful compensation from the Settlement. No objections to the distribution plan have been filed on this Court's docket or received by Class Counsel, suggesting that the Settlement Class also finds the distribution to be fair and reasonable.

Additionally, the incentive awards in this case are standard and reasonable. Each Named Plaintiff prepared for and sat for a deposition, discussed settlement options with Class Counsel, and assisted in the prosecution of this action for several years, including many meetings with counsel and significant preparation. In light of the substantial work performed by Plaintiffs and their years-long involvement in this case, the Incentive Awards are eminently reasonable, and is consistent with, or lower than, awards in other cases. *See e.g., Global Geophysical Services Inc., et al.*, No. 4:14-cv-00708, Order, ECF No. 137 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to Lead Plaintiff); *Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016), *report and recommendation adopted*, 2016 WL 4411551 (W.D. Tex. June 17, 2016) ("District courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff."); *DeHoyos v. AllState Corp.*, 240 F.R.D. 269, 340 (W.D. Tex. 2007) (collecting cases where named plaintiffs were awarded $10,000 each as an incentive award); *Hays*, 2019 WL 427331, at *13.

Accordingly, the distribution method and Incentive Awards are fair and reasonable, and merit final approval from the Court.

*Attorneys' Fees & Costs*: The *only* costs Plaintiffs seek to be paid before the Class are the costs to the Settlement Administrator in the sum of $77,252 for reasonable costs of notice and administration of the settlement. Affidavit of Christopher Longley ("Longley Decl.") ¶ 23. Indeed, the allocation formula under the settlement is designed to ensure that close to 100% of the eligible funds are distributed to Class Members after payment of reasonable notice costs and incentive awards.

Class Counsel, who work either at a non-profit organization or a major national law firm representing Plaintiffs on a pro bono basis, will almost certainly collect a miniscule portion of the fees to which they would otherwise have been entitled, and will certainly collect no more than $200,000, which is itself a small fraction of the fees and costs to which they would otherwise have been entitled under § 1983 and if calculated under the lodestar method. Further, the Court's consideration of any small award of attorneys' fees is entirely separate from approval of the Settlement. The fee structure is thus fair and reasonable, and merits final approval from the Court.

In sum, all of the *Reed* and Rule 23(e)(2) factors favor approval of the settlement in this case.

## V. THE CLASS NOTICE COMPLIED WITH THE REQUIREMENTS OF RULE 23 AND THIS COURT'S ORDER.

Under Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process," *i.e.* provide Class Members "with the

information reasonably necessary for them to make a decision whether to object to the settlement." *O'Donnell*, 2019 WL 4224040, at *26 (citations and formatting omitted).

The Court approved the proposed notice program in the Preliminary Approval Order, and Atticus Administration, LLC ("Atticus"), supervised by Class Counsel, has executed the notice program in accordance with the provisions therein. The Affidavit of Christopher Longley, the Chief Executive Officer of Atticus Administration, LLC, filed concurrently herewith details (i) the class list preparations, (ii) the method of providing notice to the Class in accordance with the Settlement Agreement, (iii) the settlement websites and toll-free information line, (iv) the receipt and processing of claim forms, and (v) the receipt and validation of exclusion requests and settlement objections, all in adherence to the Court's preliminary approval order.

In short, following receipt of the Class List from the City and conducting skip tracing to locate as many Class Members as possible, Atticus caused 55,135 Notices of Settlement to be mailed to Class Members. Longley Decl. ¶ 9. Of these, 42,405 Class Notices, or 76.91% of Class Members with addresses on record, were successfully delivered. *Id*. ¶ 11. The other Class Members could not be located from skip tracing. *Id*.

Each Class Member received either the Class A Notice Packet or the Class B Notice Packet, depending on which class the City's records indicated they were a member of. *Id*. ¶ 10. Both Notices describe the nature and status of the litigation; set forth the relevant class definition; state the class claims and issues; state that a Class Member may enter an appearance through an attorney if the Class Member so desires; disclose the right of Class Members to seek exclusion from the Settlement Class or to object to the proposed settlement, as well as the deadlines for doing so; and warn of the binding effect of the settlement approval proceedings on people who remain in the Settlement Class. In addition, the Class Notices describe the terms of the proposed Settlement and

provide contact information for Class Counsel, as well as identifying the fee that they propose to request from the Court. The Class Notices also disclose the time and place of the Fairness Hearing and the procedures for commenting on the Settlement and/or appearing at the hearing. *Id.*, Ex. A.

Additionally, Atticus established two Settlement Websites, one for Class A and one for Class B, that provide general settlement information and contain downloadable versions of the Court Documents and Claim Form, Key Case Deadlines, Contact Information, and answers to Frequently Asked Questions (FAQs). Class Members were also be able file a claim online using interactive features. *Id*. ¶ 13. In addition, Atticus provided a settlement email address allowing for Class Members to email questions or forms to Atticus. *Id*. Finally, there was a dedicated toll-free number which provides live bilingual phone support (in English and Spanish) for Class Members who may have questions about the Settlement. *Id*. ¶ 14. As of March 8, 2021, Atticus received and promptly addressed 222 calls, 31 letters, and 17 emails from Class Members with inquiries regarding the settlement. *Id*. ¶ 15.

3,220 Class A Notice packets were successfully delivered to Class A Members. *Id*. ¶ 16. Class A consists of two groups: Group 1 consists of all people who declare on their claim form that they believe probable cause was not found in their case and for whom that declaration is verified by the Settlement Administrator. Group 2 consists of all other Class A members (including those who do not return a claim form, or whose claim form could not be verified). Pending final approval from the Court, each Group 2 Class A Member that received a Class A Notice Packet will receive a settlement payment without taking any action. Group 1 Class A Members will also receive settlement payments, but are entitled to larger settlement payments. The distributions will be as described in Exhibit A to the Settlement Agreement. As of March 8, 2021, Atticus had received 235 Probable Cause Claim Forms. *Id*. ¶ 18. Of the 235 Probable Cause Claim Forms 3

were verifiable and valid; 203 were verifiable and invalid; and 29 were not verifiable and ultimately deemed invalid. *Id*.

Class B Members were required to complete and submit a Claim Form by March 20, 2021 to be eligible for a cash payment. Pending final approval from the Court, each Class B Member who returned a valid Claim Form will receive a settlement payment in accordance with Exhibit A to the Settlement Agreement. *Id*. ¶ 19. As of March 8, 2021, Atticus has received 2,019 Class B Claim Forms. *Id*. ¶ 20. Of the 2,019 claims: 1,810 are valid; 17 have the potential to be valid and are in the "cure" process which allows the Class Members to correct the claim deficiency for validation; 23 are under review for reasons including but not limited to, attachments provided with the forms, missing dates of birth, insufficient and information available to determine probable cause; and 169 are invalid Class B claims, primarily because they are duplicate submissions, or they were received from individuals who are not Class Members. *Id*.

The deadline for requesting exclusion from or filing objections to the Settlement was March 8, 2021. No objections were received or filed with the Court. *Id*. ¶ 22. Atticus received just two (2) valid and timely exclusion requests. *Id*. The 2 requests for exclusion are attached as Exhibit B to the Longley Declaration.

The notice plan previously approved by the Court, and implemented by the Parties, satisfied the requirements of due process and Rule 23.

## VI. CONCLUSION

After years of vigorous litigation and an extensive negotiation process, the Parties have reached a comprehensive agreement that is fair, reasonable, and adequate, and warrants this Court's approval. As such, the Parties respectfully request that this Court approve the Settlement Agreement, award each Named Plaintiff a $10,000 incentive award, and approve payment to the

Settlement Administrator for the reasonable notice and settlement costs in the sum of $77,252. If there are unclaimed funds equal to or less than $200,000 after distribution to the Classes, Class Counsel will request approval from this Court for that sum.

Respectfully submitted,

*/s/ Ryan C. Downer*
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
ryan@civilrightscorps.org
(617) 216-2423

*/s/ Anna Rotman*
Kirkland & Ellis LLP
609 Main St., Suite 4600
Houston, TX 77002
713-836-3750
anna.rotman@kirkland.com

*/s/ Leonora S. Cohen*
*/s/ Maisie Allison*
Kirkland & Ellis LLP
2049 Century Park East
Los Angeles, CA 90067
(213) 680-8157
lena.cohen@kirkland.com

*Attorneys for Plaintiffs*

*/s/ Sean Gorman*
Bracewell LLP
711 Louisiana Street, Suite 2300
Houston, TX
77002-2770
sean.gorman@bracewell.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District for the Southern District of Texas.

                                                 *s/ Anna Rotman*
                                                 Anna Rotman